509 S.E.2d 476

**STATE of South Carolina, Respondent,**

v.

**David G. AVERY, Appellant.**

No. 24868.

Supreme Court of South Carolina.

Heard Nov. 4, 1997.

Decided Dec. 14, 1998.

Rehearing Denied Jan. 22, 1999.

Jack B. Swerling, Columbia, for appellant.

Attorney General Charles Molony Condon, Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, Assistant Attorney General John P. Riordan, Columbia; and Solicitor Barbara R. Morgan, Aiken, for respondent.

BURNETT, Justice:

Appellant was fourteen years old when he participated in the armed robbery of a convenience store. During the robbery, the store proprietor was killed. Following a transfer hearing, the family court waived jurisdiction over appellant to general sessions court. A jury convicted appellant of murder, armed robbery, and possession of a weapon during the commission of a violent crime. He received concurrent sentences of life, twenty-five years, and five years, respectively. We affirm.

## FACTS

### Transfer Hearing

According to the evidence presented at the transfer hearing, appellant and two other individuals planned to rob the # 1 Market.[1] Prior to the robbery, appellant procured two guns from a relative's home. He carried one of the guns and pointed the weapon at one of the two store employees during the robbery. One employee was shot; he died as a result of the gunshot wound. Shortly after the robbery, appellant returned to his home in Pennsylvania. He refused extradition to South Carolina. At the time of the murder and armed robbery, appellant was almost fifteen years old.[2]

---

1. The two other individuals provided statements identifying appellant as the third participant.

2. Another participant, Chavados Miles, was also a juvenile. The third participant, Chasako Glanton, was eighteen years old.

Two Department of Juvenile Justice (DJJ) employees testified on appellant's behalf. While both witnesses described appellant as "very intelligent," one also indicated appellant was "very immature." This witness stated appellant is a "follower" and respects authority. Both witnesses concluded appellant would benefit from the programs available at DJJ. Appellant's mother also testified at the transfer hearing.

The DJJ Preadjudicatory Transfer (Waiver) Evaluation was admitted into evidence at the hearing. According to the evaluation, appellant was from Pennsylvania. He had been a successful student until the ninth grade when he began skipping school. Appellant's mother reported she sent appellant to live with family members in South Carolina because he disliked the high school he was attending. Appellant, however, reported he was sent to South Carolina because he was associating with friends who were delinquents.

As reported by the evaluation, appellant denied selling illegal drugs but stated his friends sold crack and marijuana. Appellant reported he had smoked marijuana on a few occasions. He stated he began drinking beer when he was fourteen years old.

The evaluation noted several factors which could positively influence appellant's likelihood of rehabilitation. For instance, appellant had no prior referrals or adjudications in the juvenile justice system, he appeared motivated to receive help, and he expressed remorse and responsibility for his misbehavior. The report noted, "given [appellant's] parole guidelines of 36 to 54 months, there may be sufficient time to work toward his rehabilitation in the juvenile justice system."

The evaluation also noted several factors which could negatively influence appellant's likelihood of rehabilitation. For instance, appellant was charged with serious and violent offenses, he has a history of regular alcohol use, and he gave discrepant information during various interviews, indicating his unwillingness to honestly participate in the rehabilitative process.

As stated in its waiver order, the family court considered the testimony from the transfer hearing and the pre-waiver evaluation report in issuing its findings and conclusions. In

making its decision to transfer jurisdiction, the family court considered the following facts persuasive:

- There is probable cause to believe [appellant] committed the crimes for which he is charged.
- The seriousness of the offenses is of such gravity as to require waiver for the protection of the community.
- The alleged offenses are of a willful, malicious, premeditated, and dangerous nature.
- There is sufficient merit to warrant the grand jury returning a true bill on the charges.
- The offenses of Murder and Armed Robbery are felonies.
- The pre-waiver evaluation reported [appellant's] sophistication and maturity as adequate. However, [a witness] from [DJJ] testified that, in light of the juvenile's intelligence, his level of sophistication and maturity is low.
- The crimes with which [appellant] is charged are of a serious nature and if found guilty, would suggest he is capable of acting without regard for others.
- According to the pre-waiver evaluation, certain factors such as the serious and antisocial nature of the charges, the juvenile's use of drugs and alcohol and his failure to discuss his life honestly negatively affect the likelihood of rehabilitation.
- Further, this Court finds that the juvenile would not likely benefit from any programs or services offered by the [DJJ].

The family court concluded it was unlikely appellant could be rehabilitated in the juvenile justice system and it was in the best interest of appellant and the community to transfer jurisdiction to general sessions court. The family court specifically stated its findings were based on the criteria set forth in *Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966).[3]

---

**3.** In *Kent, id.,* the United States Supreme Court established the following criteria for determining whether jurisdiction should be waived under the District of Columbia Juvenile Court Act:

1. The seriousness of the alleged offense to the community and whether the protection of the community requires waiver.

## Trial

At trial, the victim's son, John Reiner, Jr.,[4] testified he and his father owned the # 1 Market. On the day of the robbery and shooting, Chasako Glanton, who Reiner knew, entered the convenience store. Glanton purchased three drinks from Reiner with a hundred dollar bill. Reiner had to make change with money kept beneath the counter. Reiner noticed another individual waiting in Glanton's vehicle outside the store.

Approximately one and one-half hours later, three slim young males wearing stocking masks entered the store. Based on the clothes Glanton had been wearing earlier in the day, Reiner recognized Glanton. Reiner testified Glanton held his father at gunpoint and demanded he give him the money from his pockets. Another robber held Reiner at gunpoint and ordered him to remove money from the cash register and from under the counter. The third participant remained at the door as a lookout. As Reiner was complying with the instructions, he heard a gun shot. The three men ran away with money from the store.

Reiner admitted he was addicted to crack cocaine. He denied, however, buying drugs from Glanton. He also denied

---

2. Whether the alleged offense was committed in an aggressive, violent, premeditated, or willful manner.

3. Whether the alleged offense was against persons or against property, greater weight being given to offenses against persons especially if injury resulted.

4. The prosecutive merit of the complaint, i.e., whether there is evidence upon which a Grand Jury may be expected to return an indictment. . . .

5. The desirability of trial and disposition of the entire offense in one court when the juvenile's associates in the alleged offense are adults who will be charged with a crime. . . .

6. The sophistication and maturity of the juvenile as determined by consideration of his home, environmental situation, emotional attitude and pattern of living.

7. The record and previous [criminal or adjudicative] history of the juvenile. . . .

8. The prospects for adequate protection of the public and the likelihood of reasonable rehabilitation of the juvenile (if he is found to have committed the alleged offense) by the use of procedures, services and facilities currently available to the Juvenile Court.

*Id.* 383 U.S. at 567, 86 S.Ct. at 1060, 16 L.Ed.2d at 100.

**4.** Reiner was twenty five years old at the time of trial.

planning a staged robbery of the convenience store with Glanton.

Chavados Miles testified he participated in the shooting and armed robbery at the # 1 Market with appellant and Glanton. He testified prior to the robbery the three took his grandmother's stockings. Appellant stated he knew where the three could obtain guns. Appellant, Glanton, and Miles went to appellant's aunt's home and confiscated two guns.

Miles testified the three placed the stockings over their faces before entering the convenience store. Miles stated he stood as sentry while appellant pointed one of the guns at Reiner and directed him to remove the cash from the register and from under the counter. Glanton pointed his gun at Reiner's father. Miles heard a gunshot then the three fled.

After the shooting and robbery, the three men rented a hotel room. They went swimming, went out to eat, and returned the two guns to appellant's aunt. Miles described Glanton as nervous; he described appellant as "normal."

Miles did not testify the robbery was staged. Miles pled guilty to murder and armed robbery.

In his statement to the police, Glanton stated he, Miles, and appellant had participated in the armed robbery and shooting at the # 1 Market. Appellant had suggested the three obtain guns. Before entering the convenience store, appellant shook hands with Glanton and Miles. Appellant demanded the money inside the store. Glanton admitted shooting the victim, but explained the gun discharged unintentionally when he turned to run from the store.

At trial, Glanton testified he sold drugs to Reiner on a daily basis. Reiner paid him with money from the store's cash register. Prior to the robbery, Glanton stated Reiner owed him money for drugs. Glanton maintained Reiner had suggested Glanton conduct a staged holdup of the convenience store to obtain the money owed to him.

Glanton testified appellant and Miles participated in the robbery. He did not know if appellant and Miles knew the robbery was staged. Glanton testified he first entered the convenience store alone; a crowd of people were inside. Reiner indicated he was to return later. Glanton testified appellant

292

obtained the two guns. Glanton maintained the safeties were placed on the guns. He stated no one other than Reiner was to be present during the staged holdup. Glanton stated he was the leader while appellant and Miles were the followers.

Appellant presented no witnesses and did not testify.

## ISSUES

I. Did the family court abuse its discretion by transferring jurisdiction to the Court of General Sessions?

II. Did the trial judge err by failing to grant appellant's motion for a directed verdict on the murder charge?

III. Did the trial judge err by denying appellant's motion for a severance?

IV. Did the trial judge err in charging the jury it could not find appellant guilty of involuntary manslaughter if it found the killing occurred during the commission of a felony?

## DISCUSSION

### I.

Appellant contends the family court judge erred in transferring jurisdiction to general sessions court. We disagree.

South Carolina Code Ann. § 20–7–430(6) (1985) authorizes the family court to determine whether it is appropriate to transfer a juvenile charged with murder to the general sessions court.[5] The appellate court will affirm a transfer order unless the family court has abused its discretion. *Sanders v. State*, 281 S.C. 53, 314 S.E.2d 319 (1984); *State v. Wright*, 269 S.C. 414, 237 S.E.2d 764 (1977).

The serious nature of the offense is a major factor in the transfer decision. *See State v. Kelsey*, 331 S.C. 50, 502 S.E.2d 63 (1998) (transfer upheld where defendant was charged with murder); *Sanders v. State, supra* (transfer upheld where defendant was charged with two counts of murder and two counts of assault and battery with intent to kill); *State v. Wright supra* (transfer upheld where defendants

---

5. Section 20–7–430 was repealed by 1996 Act No. 383, § 2, effective July 1, 1996.

were charged with armed robbery and assault and battery with intent to kill). The best interests of the public or of the juvenile may require the juvenile be held accountable as an adult for his criminal conduct. *In the Interest of Shaw*, 274 S.C. 534, 265 S.E.2d 522 (1980).

> [I]t is the responsibility of the family court to include in its waiver of jurisdiction order a sufficient statement of the reasons for, and considerations leading to, that decision. Conclusory statements, or a mere recitation of statutory requirements, without further explanation will not suffice. The order should be sufficient to demonstrate that the statutory requirement of full investigation has been met and that the question has received full and careful consideration by the family court. The salient facts upon which the order is based are to be set forth in the order.

*In re Sullivan*, 274 S.C. 544, 548, 265 S.E.2d 527, 529 (1980).

The transfer order demonstrates a full investigation had been conducted and reflects consideration of the testimony from the transfer hearing and of the DJJ's Preadjudicatory Transfer Evaluation. The order found persuasive the premeditated and serious nature of the crimes with which appellant was charged, appellant's lack of sophistication and maturity, and his unwillingness to participate in the rehabilitative process before concluding both the public's and appellant's best interests required transfer of jurisdiction. The facts upon which the court's decision is based are adequately stated within the order and are fully supported by the testimony and evidence from the transfer hearing. The family court did not abuse its discretion in transferring jurisdiction to the Court of General Sessions and it should be affirmed. *Sanders v. State, supra; State v. Wright, supra.*

## II.

Appellant argues the trial judge erred by failing to grant his motion for a directed verdict on the murder charge. Specifically, he claims there was no evidence of malice on his behalf. We disagree.

In ruling on a directed verdict, the trial judge is concerned with the existence of evidence, not its weight. *State v. Williams*, 303 S.C. 274, 400 S.E.2d 131 (1991). View-

ing the evidence in the light most favorable to the State, a jury question exists if there is any direct or substantial circumstantial evidence which reasonably tends to prove the guilt of the accused or from which guilt may be fairly and logically deduced. *Id.*

▇ When two or more combine together to commit a robbery and, during the robbery, a homicide is committed as a natural and probable consequence, all present and participating in the robbery are as guilty of the killing as the one committing the homicide. *State v. Crowe,* 258 S.C. 258, 188 S.E.2d 379, *cert. denied,* 409 U.S. 1077, 93 S.Ct. 691, 34 L.Ed.2d 666 (1972). If a person intentionally kills another during the commission of a felony, malice may be inferred. *State v. Norris,* 285 S.C. 86, 328 S.E.2d 339 (1985), *overruled on other grds., State v. Torrence,* 305 S.C. 45, 406 S.E.2d 315 (1991).

There was evidence appellant planned and participated in the armed robbery of the # 1 Market. He obtained weapons for the robbery, carried one of the weapons, wore a mask, and demanded Reiner give him the money from the cash register while pointing a gun. Reiner's father was fatally shot even though Reiner complied with appellant's instructions to give him the money. Appellant acted "normally" after the shooting. Viewing this evidence in the light most favorable to the State, the trial judge properly denied appellant's motion for a directed verdict on the murder charge.

## III.

▇ Appellant contends the trial judge erred by failing to grant his motion for a severance. Before trial, he argued his defense was antagonistic to that of his co-defendant Glanton and, therefore, a severance was necessary in order for a fair trial under the Sixth Amendment. We disagree.

Appellant was jointly charged with murder. He was not entitled to a separate trial as a matter of right. *State v. Crowe, supra.* The trial judge's refusal to grant a severance did not constitute an abuse of discretion. Glanton admitted he shot the victim, but claimed the shooting was unintentional. Glanton explained the robbery was merely staged. Glanton's

testimony was favorable to appellant. Appellant's defense was not antagonistic to Glanton's defense.

Moreover, if appellant had been tried separately from Glanton, the same evidence could have been presented. Appellant could still have been prosecuted under the theory of accomplice liability for the murder. Appellant has failed to show any abuse of discretion or prejudice from the joint trial. *Id.*

## *IV.*

Appellant argues the trial judge erred by instructing the jury it could not return a verdict of armed robbery and involuntary manslaughter. We disagree.

During the charge conference, the trial judge stated he would charge the jury on the lesser-included offense of involuntary manslaughter, but would instruct the jury it could not return a verdict of involuntary manslaughter if it found a felony had been committed. Appellant responded, stating inconsistent verdicts are permitted. The trial judge stated, "we'll cross that bridge when we get to it."

The judge instructed the jury as follows:

Now, ladies and gentlemen, with regard to the crime of involuntary manslaughter, it does not include the killing of another while engaged in a felony. I would charge you that under South Carolina law armed robbery, if you find the State has established that beyond a reasonable doubt and a violation of 1–6–23–490 [sic] which is the display of a deadly—of a weapon in the course of a violent crime, both constitute felonies. And if you find a felony in fact occurred then involuntary manslaughter does not apply.

Appellant did not object to this instruction.

Approximately forty-five minutes after the jury began deliberating, it asked the following questions:

Involuntary manslaughter and armed robbery, can these verdicts [be rendered] together? Do we have to convict of murder if we convict of armed robbery? Can we convict the shooter, Mr. Glanton, of murder, do we have to convict Mr. Avery of the same or can we convict Mr. Avery of armed robbery and manslaughter?

After discussing a response with the parties, the trial judge instructed the jury as follows:

All right, the first question is, if I can make a fair interpretation of it, is it possible to return an involuntary manslaughter and an armed robbery conviction as a possible form of the verdict? ... involuntary manslaughter does not include the killing of another while engaged in a felony ... If you find beyond a reasonable doubt that one or more of the defendants committed the crime of armed robbery, and you find that a homicide was committed during the course of that robbery, you may not return a verdict of involuntary manslaughter.

You may then have the option of returning a verdict of murder, if you're satisfied that the State has proven the elements of that crime beyond a reasonable doubt, or you have the option of returning a verdict of not guilty of murder, but you may not return a verdict of involuntary manslaughter, if you find beyond a reasonable doubt that one or more of the defendants committed the crime of armed robbery.

In response to the jury's third question, the trial judge restated his instruction on accomplice liability. At the conclusion of the supplemental instructions, appellant requested the trial judge charge the jury it could acquit him of murder and armed robbery but convict him of involuntary manslaughter. The trial judge denied this request.

 Although appellant originally suggested the jury could return inconsistent verdicts on armed robbery and involuntary manslaughter, he did not object to the trial judge's initial or supplemental instructions regarding armed robbery and involuntary manslaughter. Accordingly, this issue is not preserved for appeal. *State v. Longworth,* 313 S.C. 360, 438 S.E.2d 219 (1993), *cert. denied,* 513 U.S. 831, 115 S.Ct. 105, 130 L.Ed.2d 53 (1994) (where appellant fails to object to jury charge, issue is not preserved for consideration on appeal).

 In any event, although the jury could have returned a verdict of armed robbery and involuntary manslaughter,[6] it

---

**6.** *State v. Alexander,* 303 S.C. 377, 401 S.E.2d 146 (1991) (abolishing rule against inconsistent verdicts).

would have been an incorrect statement of law for the trial judge to instruct the jury appellant could be convicted of involuntary manslaughter and armed robbery. *State v. Tucker*, 324 S.C. 155, 478 S.E.2d 260 (1996), *cert. denied*, 520 U.S. 1200, 117 S.Ct. 1561, 137 L.Ed.2d 708 (1997)(involuntary manslaughter is defined, in relevant part, as the killing of another without malice and unintentionally, but while one is engaged in the commission of some unlawful act not amounting to a felony and not naturally tending to cause death or great bodily harm). The trial judge is required to charge the current and correct law of South Carolina. *State v. Foust*, 325 S.C. 12, 479 S.E.2d 50 (1996).

Appellant's Argument II is affirmed pursuant to Rule 220(b)(1), SCACR, and the following authority: *State v. Longworth, supra.*

**AFFIRMED.**

MOORE and WALLER, JJ., and GEORGE T. GREGORY, Jr., Acting Associate Justice, concur.

FINNEY, C.J., dissenting in separate opinion.

FINNEY, Chief Justice:

I respectfully dissent. In my opinion, the waiver order is insufficient because it does not set forth the basis for its decision with sufficient specificity to permit meaningful review. *Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966). I would hold that the order inadequately explains why the family court judge discounted the evidence showing appellant could benefit from rehabilitation, and the other evidence militating against the transfer of jurisdiction to the circuit court. Accordingly, I would reverse and remand to the family court for reconsideration of the waiver issue.