529 S.E.2d 20

**The STATE, Appellant,**

v.

**COREY D., a minor under the age of fourteen, Respondent.**

**No. 25077.**

Supreme Court of South Carolina.

Heard Jan. 4, 2000.

Decided March 6, 2000.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, and Assistant Attorney General Robert E. Bogan, all of Columbia; and Solicitor Cecil Kelly Jackson, of Sumter, for appellant.

J. Edward Bell, IIII, of Bell & Moore, P.A., of Sumter, for respondent.

WALLER, Justice:

The family court denied the State's motion to transfer jurisdiction to the court of general sessions. This appeal is from the order of the circuit court affirming the family court's decision. We affirm in part and reverse in part.

## FACTS

Respondent was charged with two counts each of murder, criminal sexual conduct in the first degree (CSC), and burglary in the first degree. He was twelve years old at the time the crimes were committed.

The State petitioned the family court to transfer jurisdiction to the court of general sessions, and a waiver hearing was held. The family court denied the State's motion to transfer jurisdiction of respondent's case. The State appealed to the circuit court which affirmed the family court's order.

## ISSUES

1. Does the transfer of jurisdiction statute allow a juvenile under the age of fourteen charged with murder to be waived to general sessions court?

2. Did the family court abuse its discretion in not transferring jurisdiction over the murder charges to general sessions court?

3. If respondent is waived to general sessions court based on the murder charges, must the remaining charges be retained in family court?

### 1. TRANSFER OF JUVENILE UNDER AGE FOURTEEN

■ The circuit court found that the transfer statute, S.C.Code Ann. § 20–7–7605 (Supp.1998), did not authorize the family court to waive a twelve-year-old to general sessions court.[1] The State argues that the circuit court erred. We agree.

The circuit court found that the transfer statute did not allow respondent to be waived because he was under fourteen years of age. The circuit court focused on whether a twelve-year-old could be waived up to general sessions court if charged with a Class A, B, C, or D felony. Looking primarily to subsection five of the transfer statute, the circuit court determined that the family court had the discretion to waive up a defendant as young as fourteen.[2] The circuit court

---

1. We note that the family court did not deny the motion to transfer on this ground.

2. Subsection five of the transfer statute provides the following:

   (5) If a child fourteen or fifteen years of age is charged with an offense which, if committed by an adult, would be a Class A, B, C, or D felony as defined in Section 16–1–20 or a felony which provides for a maximum term of imprisonment of fifteen years or more, the [family] court, after full investigation and hearing, may determine it contrary to the best interest of the child or of the public to retain jurisdiction. The court, acting as committing magistrate, may bind over the child for proper criminal proceedings to a court which would have trial jurisdiction of the offenses if committed by an adult.

   S.C.Code Ann. § 20–7–7605 (Supp.1998). The circuit court also noted that subsections nine and ten of the transfer statute specifically relate to a "child fourteen years of age or older." *Id.*

concluded that the statute did not give this discretion to the family court when a child under the age of fourteen is involved.

The State argues that the circuit court failed to address subsection six of the transfer statute which specifically deals with when a child has been charged with murder. Moreover, the State contends that because this subsection contains no explicit age limitation for waiver, the circuit court erred in finding that the statute prohibits the family court from transferring jurisdiction over the murder charges. We agree.

■■■ In interpreting a statute, this Court's primary function is to ascertain the intent of the legislature. *E.g., Whitner v. State,* 328 S.C. 1, 6, 492 S.E.2d 777, 779 (1997), *cert. denied,* 523 U.S. 1145, 118 S.Ct. 1857, 140 L.Ed.2d 1104 (1998). Moreover, "there is a basic presumption that the legislature has knowledge of previous legislation as well as of judicial decisions construing that legislation when later statutes are enacted concerning related subjects." *Id.*

■■■ Subsection six of section 20–7–7605 provides, in relevant part, as follows:

(6) Within thirty days after the filing of a petition in the family court *alleging the child has committed the offense of murder* or criminal sexual conduct, the person executing the petition may request in writing that the case be transferred to the court of general sessions with a view to proceeding against the child as a criminal rather than as a child coming within the purview of this article. The judge of the family court is authorized to determine this request. . . .

S.C.Code Ann. § 20–7–7605(6) (Supp.1998) (emphasis added).[3]

Section 20–7–7605 was enacted in 1996. It is substantially similar to its predecessor statute, section 20–7–430, which was enacted in 1981 and repealed in 1996. Prior to 1981, section 14–21–510 was a statute similar to subsection six of the transfer statute and section 14–21–540 was the general trans-

---

3. While section 20–7–7605(6) appears to apply to charges of CSC, this Court recently decided that S.C.Code Ann. § 16–3–659 (1985) prohibits a juvenile under the age of fourteen from being transferred to general sessions court on a CSC charge. *Slocumb v. State,* 337 S.C. 46, 522 S.E.2d 809 (1999).

fer statute. These two statutes were repealed in 1981. Section 14–21–510 originally allowed waiver of a juvenile charged with murder, manslaughter, rape, attempted rape, arson, common-law burglary, bribery or perjury. Later, this statute was amended to only list murder and rape. *See In the Interest of Shaw*, 274 S.C. 534, 538, 265 S.E.2d 522, 524 (1980) (citing S.C.Code Ann. § 14–21–510(C) (Supp.1978)).

In *Shaw*, this Court noted that the statute allowing waiver in murder and rape cases "authorizes a transfer of jurisdiction *on the basis of the nature of the offense without regard to the age of the juvenile.* On the other hand, section 14–21–540 authorizes a transfer of jurisdiction on the basis of the age of the juvenile without regard to the nature of the offense, as long as the offense would be criminal if committed by an adult." *Shaw*, 274 S.C. at 539, 265 S.E.2d at 524 (emphasis added). The *Shaw* Court concluded that "these two provisions of law were intended by the General Assembly to cover separate situations." *Id.*

Applying the reasoning of *Shaw* to the current version of the transfer statute, section 20–7–7605(6) authorizes transfer on the basis of the offense (murder) without regard to age, while other subsections of 20–7–7605 authorize transfer on the basis of age and the classification of the offense. Because there is no express age designation in section 20–7–7605(6) whereas other subsections expressly contain age restrictions, we conclude that the Legislature intended these separate subsections "to cover separate situations." *Shaw*, 274 S.C. at 539, 265 S.E.2d at 524.

Moreover, in *Sanders v. State*, 281 S.C. 53, 314 S.E.2d 319 (1984), this Court held that the family court did not abuse its discretion in transferring a case to general sessions court where the appellant, at the age of thirteen, was charged with two counts of murder and two counts of assault and battery with intent to kill. The State argues that because section 20–7–7605 was enacted in 1996—after the *Sanders* opinion—the Legislature is charged with the knowledge of this decision. The State contends that by not acting to change the transfer statute to prevent children under fourteen from being waived up to general sessions court, the Legislature intended that section 20–7–7605(6) apply to all juveniles who commit the

offense of murder, even if they are under the age of fourteen. We find the State's argument persuasive. *See Whitner, supra* (there is a basic presumption that the legislature has knowledge of previous legislation as well as of judicial decisions construing that legislation when later statutes are enacted).

We hold that the Legislature intended to give the family court discretion to transfer jurisdiction in a murder case for any juvenile, regardless of age. The circuit court therefore erred in finding that the transfer statute prohibits a juvenile under the age of fourteen from being waived to general sessions court when charged with murder. Accordingly, the circuit court's ruling on this issue is reversed.

## 2. DENIAL OF TRANSFER MOTION

At the waiver hearing for respondent and three co-defendants, the following pertinent evidence was presented about the victims, the ensuing investigation, and the pre-adjudicatory waiver evaluations of the juveniles.

The charges against respondent relate to two separate incidents which occurred within one week. On September 26, 1997, Florence Bradford, a 92–year–old woman, was discovered, nude, on the ground, underneath her residence. The police officer who discovered Bradford testified at the waiver hearing that she assumed Bradford had fallen through the floorboards and rolled under the home. The officer testified that Bradford was very blue because the weather had been extremely cold.

Bradford died in the hospital two days later. The forensic pathologist who performed the autopsy testified that Bradford had been beaten on her head, torso and extremities and that there was recent trauma to the genital region. The pathologist concluded that Bradford died from hypothermia and dehydration due to multiple blunt force injuries and cold exposure. In addition, the pathologist believed the genital trauma was consistent with sexual assault.

On October 1, 1997, the body of Ruby Currie was discovered in her home. Currie, a 93–year–old woman, was found in her bedroom with her panties off, her bottom half exposed, and her gown pulled up. Black pepper had apparently been poured on her chest area. The pathologist testified that

Currie's death was caused by asphyxiation due to manual strangulation. According to the pathologist, sexual assault and blunt force trauma to the head and extremities also contributed to Currie's death.

In their investigation of the deaths of Bradford and Currie, police interrogated fourteen-year-old Chris O. Chris gave a taped statement which implicated himself, respondent, and another juvenile, Markell J., in the Currie murder. Chris also implicated respondent in the Bradford murder. Based on Chris' statement, police apprehended respondent for questioning. He gave a taped statement in which he admitted participating in both the Bradford and Currie murders. He stated that he, Chris and Markell went to rob these women, and after entering their residences, beat and raped them.

Another boy, Toby C., age 14, gave a taped statement. He implicated respondent, Chris, and fifteen-year-old Carlos J. in the Currie murder. Toby stated that he did not enter the residence but acted more as a look-out.

Respondent testified at the waiver hearing. He denied participation in these murders. He stated that he saw Toby, asked Toby what he was doing, and that Toby told him to "look." Respondent testified that he looked in through the door, saw two people assaulting Currie, and then turned around and ran away. Respondent stated that his taped inculpatory statement was coerced by police.

The waiver hearing involved respondent, Chris, Carlos, and Toby. Dr. Charles Sailor, the forensic psychologist who performed the waiver evaluation of Carlos, testified that although Carlos was fifteen years old, he found Carlos' maturity to be more characteristic of a twelve-year-old child than fifteen-year-old. With an IQ of 70, Dr. Sailor characterized Carlos as on the borderline of mildly mentally retarded. The psychologists who performed the waiver evaluations of Chris and Toby, both 14 years old, classified both these boys as mildly mentally retarded.

In contrast, respondent's waiver evaluation by Dr. Elliott Herman revealed that he had average intelligence with an IQ of 91. Dr. Herman found respondent's level of sophistication and maturity consistent with his age. Regarding respondent's likelihood of reasonable rehabilitation, Dr. Herman found six

positive factors and six negative factors. For example, as positive factors for rehabilitation, Dr. Herman noted respondent's level of intellectual functioning, his lack of history of severe mental illness or substance of abuse, his ability to empathize with the victims, and his age. Negative factors included the serious and violent nature of the offenses, respondent's vulnerability to negative peer pressure, and respondent's pattern of aggressive behavior and his tendency to blame others for that behavior.

In its order denying the State's motion to transfer jurisdiction, the family court made several findings of fact. The family court found that:

—the crimes respondent had been charged with are horrible and shocking;

—there was probable cause to believe respondent participated actively in all aspects of the crimes, and this justified concern for the safety of the public if he were to be released to live freely among the public anytime soon;

—the crimes were violent, aggressive, premeditated and willful;

—indictment by a grand jury was reasonably certain;

—it would be easier for the state to proceed against all defendants in the same court, especially in view of the only evidence being statements of some defendants;

—respondent's intellectual abilities were chronologically appropriate, unlike his co-defendants; and

—respondent was the brightest of all the co-defendants and was more susceptible to rehabilitation than the other defendants.

■ The family court specifically considered the factors set forth in *Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966).[4] Based on the *Kent* factors and the factual

---

4. In *Kent*, the United States Supreme Court noted the following criteria for determining whether jurisdiction should be waived under the District of Columbia Juvenile Court Act:

1. The seriousness of the alleged offense to the community and whether the protection of the community requires waiver.
2. Whether the alleged offense was committed in an aggressive, violent, premeditated, or willful manner.

findings, the family court concluded that there was time for respondent to be rehabilitated by the juvenile justice system and that, in addition to rehabilitation, protection of the public and appropriate punishment could be appropriately addressed under the juvenile system. Although the family court waived respondent's three co-defendants to general sessions court, it denied the State's motion to transfer jurisdiction of respondent's case.

The circuit court found that the family court, by conducting an extensive waiver hearing and evaluating the *Kent* factors, had followed appropriate procedure. The circuit court ruled there was evidence to support the family court's decision to deny the transfer motion and therefore affirmed.

The State argues the family court abused its discretion in denying the motion to transfer jurisdiction. We agree.

Initially, we note that there is no challenge to the manner in which the family court conducted the proceedings below. The waiver hearing indeed was extensive and the family court's order reflects that the evidence presented at the hearing was duly considered. *See State v. Kelsey*, 331 S.C. 50, 65, 502 S.E.2d 63, 70–71 (1998) ("It is the responsibility of the family court to include in its waiver of jurisdiction order a sufficient statement of reasons for, and considerations leading to, that decision."). Moreover, the family court specifically considered

3. Whether the alleged offense was against persons or against property, greater weight being given to offenses against persons especially if injury resulted.

4. The prosecutive merit of the complaint, i.e., whether there is evidence upon which a Grand Jury may be expected to return an indictment. . . .

5. The desirability of trial and disposition of the entire offense in one court when the juvenile's associates in the alleged offense are adults who will be charged with a crime. . . .

6. The sophistication and maturity of the juvenile as determined by consideration of his home, environmental situation, emotional attitude and pattern of living.

7. The record and previous [criminal or adjudicative] history of the juvenile. . . .

8. The prospects for adequate protection of the public and the likelihood of reasonable rehabilitation of the juvenile (if he is found to have committed the alleged offense) by the use of procedures, services and facilities currently available to the Juvenile Court.

*Kent*, 383 U.S. at 566–67, 86 S.Ct. at 1060, 16 L.Ed.2d at 100–01.

the *Kent* factors, which in previous cases this Court has implicitly approved as appropriate criteria. *See State v. Avery,* 333 S.C. 284, 289 n. 3, 509 S.E.2d 476, 479 n. 3 (1998); *Kelsey,* 331 S.C. at 65 n. 4, 502 S.E.2d at 70 n. 4.

Regardless of the procedural aspects of the transfer proceedings, this Court reviews the merits of a transfer order for an abuse of the family court's discretion. *Avery,* 333 S.C. at 292, 509 S.E.2d at 481; *Sanders,* 281 S.C. at 56, 314 S.E.2d at 321; *State v. Wright,* 269 S.C. 414, 419–20, 237 S.E.2d 764, 767 (1977). The term 'abuse of discretion' has no opprobrious implication and may be found if the conclusions reached by the lower court are without reasonable factual support. *Runyon v. Wright,* 322 S.C. 15, 19, 471 S.E.2d 160, 162 (1996); *South Carolina State Highway Dep't v. Sharpe,* 242 S.C. 397, 402, 131 S.E.2d 257, 259 (1963). We note, however,

[i]t is not always easy to determine when and if a trial judge has abused his discretion. Overly simplified, abuse of discretion involves the extent of disagreement. When an appellate court is in agreement with a discretionary ruling or is only mildly in disagreement, it says that the trial judge did not abuse his discretion. On the other hand, when the appellate court is in substantial or violent disagreement, it says that there has been an abuse of discretion.

*Rish v. Rish,* 296 S.C. 14, 15–16, 370 S.E.2d 102, 103 (Ct.App. 1988).

In evaluating whether the family court abused its discretion, we consider the *Kent* factors and emphasize that the serious nature of the offense is a major factor in the transfer decision. *Avery,* 333 S.C. at 292, 509 S.E.2d at 481; *Kelsey,* 331 S.C. at 65, 502 S.E.2d at 71; *Sanders,* 281 S.C. at 56, 314 S.E.2d at 321. Furthermore, "[t]he best interests of the public or of the juvenile may require the juvenile be held accountable as an adult for his criminal conduct." *Avery,* 333 S.C. at 293, 509 S.E.2d at 481.

In our opinion, the family court's decision to deny the transfer motion is not reasonably supported by its own factual findings. The family court found, and the evidence supports, that these horrible, shocking crimes were willfully committed and there was probable cause to believe respondent participated actively in all aspects of the crimes. That these crimes

were violent, premeditated, and committed against elderly women clearly indicates their serious nature. While murder will always be considered "serious," the heinousness of these particular crimes is beyond dispute.

Additionally, the family court found indictment by a grand jury likely and that it would be easier for the state to proceed against all defendants in the same court. Nonetheless, the family court waived respondent's co-defendants to general sessions court while retaining jurisdiction of respondent's case. Though the family court did find that respondent's intellectual abilities were superior to those of his co-defendants and that respondent was more susceptible to rehabilitation than his co-defendants, we believe that under the circumstances of this case these considerations do not overcome the overwhelming amount of evidence which militates in favor of transferring the murder charges to a court of general sessions.

We find that, with regard to the murder charges against respondent, the family court abused its discretion in denying the State's motion to transfer jurisdiction.

### 3. JURISDICTION OF THE BURGLARY AND CSC CHARGES

The issue remains as to whether the charges of first degree burglary and first degree CSC must be retained in family court or may be transferred to the court of general sessions along with the murder charges.

The State maintains the transfer statute applies to the transfer of jurisdiction over all related charges. We disagree.

As discussed above in Issue 1, subsection six of the transfer statute allows the family court discretion to waive a juvenile to general sessions court on charges of murder. Although section 20–7–7605(6) on its face appears to apply to charges of CSC as well, this Court recently concluded that S.C.Code Ann. § 16–3–659 (1985) [5] prohibits a juvenile under

---

5. Section 16–3–959 states that the "common law rule that a boy under fourteen years is conclusively presumed to be incapable of committing the crime of rape shall not be enforced in this State. *Provided, that any person under the age of 14 shall be tried as a juvenile* " when charged with CSC. (Emphasis added.)

the age of fourteen from being transferred to general sessions court on a CSC charge. *Slocumb v. State*, 337 S.C. 46, 522 S.E.2d 809 (1999). Accordingly, the CSC charges may not be transferred to general sessions court.

■ Regarding the burglary charges, first degree burglary is classified as a felony punishable by life imprisonment or, at a minimum, by a prison term of not less than fifteen years. S.C.Code Ann. § 16–11–311 (Supp.1998). Thus, subsection five of the transfer statute applies, and that section provides, in part, as follows:

> *If a child fourteen or fifteen years of age* is charged with an offense which, if committed by an adult, would be a Class A, B, C, or D felony as defined in Section 16–1–20 *or a felony which provides for a maximum term of imprisonment of fifteen years or more,* the [family] court, after full investigation and hearing, may determine it contrary to the best interest of the child or of the public to retain jurisdiction.

S.C.Code Ann. § 20–7–7605(5) (Supp.1998) (emphasis added). Based on the plain language of this subsection, a child who is twelve years old is not subject to transfer. As we stated above in Issue 1, this subsection authorizes transfer on the basis of age *and* the classification of the offense. Because respondent does not meet the age restriction of section 20–7–7605(5), transfer of the burglary charges is simply not authorized by the statute.

■ The State argues that because CSC and burglary charges relate to the same incidents as the murder charges, this Court should apply a "transactional" analysis, and transfer all the charges to general sessions court.[6] Although it may seem illogical that respondent will be treated as a juvenile in family court for the CSC and burglary charges, while being treated as an adult in general sessions court for the murder charges, it is beyond this Court's power to effect a change in the statutes enacted by the Legislature. *Keyserling v. Beasley,* 322 S.C. 83, 86, 470 S.E.2d 100, 101 (1996) (the Court does

---

6. *Cf. State v. Hamilton,* 285 S.C. 133, 328 S.E.2d 633 (1985) (where the Court held that the circuit court had jurisdiction over a conspiracy charge against a juvenile defendant even though this charge had not been presented to and transferred by the family court).

not sit as a superlegislature to second guess the wisdom or folly of decisions of the General Assembly).

Therefore, we hold that jurisdiction over the CSC and burglary charges must be retained in the family court.

## CONCLUSION

We reverse the circuit court's ruling that the transfer statute, section 20–7–7605, prevents waiver of a juvenile under the age of fourteen when charged with murder. Finding that the family court abused its discretion by not waiving respondent to general sessions court on the murder charges, we also reverse the circuit court's ruling which affirmed this aspect of the family court's order. We affirm, however, the denial of transfer on the CSC and burglary charges.

**AFFIRMED IN PART; REVERSED IN PART.**

TOAL, Acting C.J., MOORE, BURNETT, JJ., and Acting Associate Justice GEORGE T. GREGORY, Jr., concur.