649 S.E.2d 102

**The STATE, Respondent**

v.

**Jeremy AVERY, Appellant.**

No. 4259.

Court of Appeals of South Carolina.

Submitted June 1, 2007.

Filed June 21, 2007.

Rehearing Denied Aug. 27, 2007.

---

528

Graham L. Newman, of Columbia and Jack D. Howle, Jr., of Sumter, for Appellant.

Attorney General Henry D. McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, Senior Assistant Attorney General William E. Salter, III, Office of the Attorney General, all of Columbia; and Solicitor Cecil Kelly Jackson, of Sumter, for Respondent.

KITTREDGE, J.

Jeremy Avery appeals his convictions and sentences for murder, armed robbery, and car jacking. Avery argues the trial court erred in failing to grant his motions for change of venue and severance. He also argues the trial court erred in ruling his statements to law enforcement were admissible because they were given voluntarily. Finally, Avery asserts the family court erred in failing to consider the appropriate factors before transferring jurisdiction to the circuit court, and that the transfer was unconstitutional. We affirm.[1]

## I.

On September 27, 2002, Avery and another man car-jacked, robbed, and murdered a man in Sumter County. Shortly thereafter, law enforcement took Avery to the Sumter County Law Enforcement Center, where they handcuffed him to a chair, and read him his *Miranda* rights.[2] Avery signed a waiver of his *Miranda* rights and verbally confessed to the car jacking, robbery, and murder. Law enforcement allowed Avery to talk to his mother, after which Avery signed a written statement memorializing his earlier verbal confession.

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

2. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

The Department of Juvenile Justice assumed custody of Avery, and the case went before the family court.

The family court transferred jurisdiction of the case to the circuit court. Avery moved the trial court for (1) change of venue, (2) severance, (3) suppression of written statements Avery made to Sumter County law enforcement, and (4) remand back to the family court because the transfer violated the Eighth Amendment to the United States Constitution. The trial court denied all motions. The jury convicted Avery of all charges and the trial judge sentenced him to thirty-five years imprisonment. Avery appeals.

## II.

### A. Change of Venue

Avery argues the trial court erred in refusing to grant his motion for change of venue because the members of the jury were exposed to extensive pretrial publicity. The trial court did not err.

"A motion to change venue is addressed to the sound discretion of the trial judge and will not be disturbed absent an abuse of discretion." *State v. Manning*, 329 S.C. 1, 7, 495 S.E.2d 191, 194 (1997). "An abuse of discretion occurs when the trial judge's ruling has no evidentiary support." *Id.*

When a trial judge bases the denial of a motion for a change of venue because of pretrial publicity upon an adequate voir dire examination of the jurors, his decision will not be disturbed absent extraordinary circumstances. When jurors have been exposed to pretrial publicity, a denial of a change of venue is not error when the jurors are found to have the ability to set aside any impressions or opinions and render a verdict based on the evidence presented at trial. Therefore, mere exposure to pretrial publicity does not automatically disqualify a prospective juror. Instead, the relevant question is not whether the community remembered the case, but whether the jurors had such fixed opinions that they could not judge impartially the guilt of the defendant. It is the defendant's burden to demonstrate actual juror prejudice as a result of such publicity.

*Sheppard v. State,* 357 S.C. 646, 655, 594 S.E.2d 462, 467 (2004) (citations omitted); *see also State v. Evins,* 373 S.C. 404, 645 S.E.2d 904 (2007) (Shearhouse Adv. Sh. No. 20 at 21). "Absent extraordinary circumstances, the ruling of the trial judge, developed through adequate voir dire examination of the jurors, that the objectivity of the jury panel has not been polluted with outside influence, will not be disturbed." *State v. Fowler,* 266 S.C. 203, 208, 222 S.E.2d 497, 499 (1976).

Here, the trial court thoroughly examined the venirepersons regarding pretrial publicity. The trial court informed the venirepersons:

Now, ladies and gentlemen, I now need to know what knowledge you might have about this particular case, and ultimately what impact, if any, that knowledge may have upon your ability to serve as a juror in this case.

I have read the indictment to you as I have said not because it is evidence nor is it proof of anything that it contains. It is simply a charging paper that tells you or me or anybody else who reads it what this case is all about.

Because I need—now need to know if any of you all know anything about this case, if you have seen or heard or read anything about this case or if you have any knowledge about this case from any source at all, the first thing that I need to know is just simply to identify you by juror name and by number, and then we will go from that point on to the next level of inquiry in a slightly different setting.

So the first thing that I need to know is if you have seen or heard or read anything about this case or if you have any knowledge about the case of any source at all, please stand at this time.

At this point, thirty-two venirepersons stood.[3] The trial court then related to these venirepersons:

All right. Ladies and gentlemen, here's what we need to do now. We're going to need to inquire of you individually across the hall in the jury room about your knowledge about this case and as I have said, about what impact it will have on you, if any at all. It may not, but we need to know that.

---

3. The record does not disclose the total number of jurors in the venire.

The trial court then individually examined these venirepersons; the court inquired as to each venireperson's (1) exposure to the case, (2) formation of opinions about the case, and (3) ability to set aside those opinions in order to determine with impartiality whether the defendant was guilty beyond a reasonable doubt.

Of the thirty-two venirepersons who said they heard something about the case, a vast majority of them read about the crime in the local newspaper (at the time the crime occurred) and could not remember anything beyond the fact that the crime occurred. All but six venirepersons formed no opinion about the defendant's guilt or innocence, and of the six venirepersons who formed an opinion, all but two told the trial court they could set aside that opinion to judge the defendant's guilt or innocence with impartiality. The two venirepersons who could not set aside their formed opinions were excused by the trial court.

Avery then moved the trial court for a change of venue, which the trial court denied, stating:

I think our system recognizes that it is practically impossible in the world that is fraught with . . . news coverage, as ours is, to find the type of informed juror that you would want to be on a jury panel in the first place who has not read or heard or seen something about most high profile cases, and certainly this is one, and so it does not require disqualification on that basis alone.

The question is whether or not they have formed an opinion. And then even beyond that, forming an opinion under the case law is not fatal to their qualification as a juror if they are able to set aside the opinion that they have formed and base their decision in the trial of the case on the evidence presented in court.

And all the people who indicated that they have formed an opinion . . . all of them were . . . people who had the ability, the intellect, in some case the education, to be able to objectively analyze a situation and to base their decision on what they would hear in court, and they told me that. And there was no reason in my observation of them for me to believe that they were sandbagging us or that they were being disingenuous or whether they were being untruthful.

So I respectfully note your motion, your renewal of your motion for change of venue, but must deny it on those basis.

The trial court did not abuse its discretion in denying Avery's motion for change of venue. If anything, the learned trial judge took a textbook approach in handling a defendant's motion for change of venue based on pretrial publicity. The trial court identified the venirepersons who were exposed to pretrial publicity, and individually examined them to determine whether they were so polluted by the pretrial publicity that they could not determine the defendant's guilt with impartiality. A vast majority of the venirepersons who were exposed to pretrial publicity were not infected by it; that is, they were fully capable of objectively viewing the evidence to determine whether Avery was guilty beyond a reasonable doubt. As the trial court articulated, mere exposure to pretrial publicity is not enough to disqualify a venireperson. The venireperson must not only have a formed opinion of the defendant's guilt, but also be unable to set that opinion aside to view the evidence with impartiality. The trial court excused the two venirepersons who could not do so. The remaining venirepersons, the record demonstrates, could view the evidence impartially. The trial court is affirmed on this issue.

## B. Severance

 Avery argues the trial court erred in refusing to grant his motion for severance because Avery's co-defendant "placed Avery in a situation of fear and intimidation." Avery has not shown prejudice.

A motion for severance is addressed to the sound discretion of the trial court. The trial court's ruling will not be disturbed on appeal absent an abuse of that discretion. An abuse of discretion occurs when a trial court's decision is unsupported by the evidence or controlled by an error of law.

There can be no clearly defined rule for determining when a defendant is entitled to a separate trial, because the exercise of discretion means that the decision must be based upon a just and proper consideration of the particular circumstances which are presented to the court in each case.

A severance should be granted only when there is a serious risk that a joint trial would compromise a specific trial right of a codefendant or prevent the jury from making a reliable judgment about a codefendant's guilt. An appellate court should not reverse a conviction achieved at a joint trial in the absence of a reasonable probability that the defendant would have obtained a more favorable result at a separate trial.

A defendant who alleges he was improperly tried jointly must show prejudice before this court will reverse his conviction. The general rule allowing joint trials applies with equal force when a defendant's severance motion is based upon the likelihood he and a codefendant will present mutually antagonistic defenses, i.e., accuse one another of committing the crime. The rule allowing joint trials is not impugned simply because the codefendants may present evidence accusing each other of the crime.

*State v. Walker,* 366 S.C. 643, 656–57, 623 S.E.2d 122, 128–29 (Ct.App.2005) (citations omitted).

Avery has not shown how he was prejudiced by the joint trial. His first claim is that he could not confide in his attorney because his co-defendant intimidated him. To the extent this would even serve as a ground for severance, Avery put forth no proof of this intimidation, let alone proof of how, specifically, this intimidation hindered his attorney's ability to defend him. Avery's second claim is that the joint trial violated his right to confront the witnesses against him. In this case, all statements from Avery's co-defendant that referred to Avery were redacted precisely so Avery's right to confront his witness would not be impinged. *See Bruton v. U.S.,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Because Avery has not demonstrated how he was prejudiced by the joint trial, the trial court is affirmed on this issue.

## C. Confession

 Avery argues the trial court erred in ruling his statements to law enforcement were admissible as voluntarily given because at the time they were given Avery was young, intoxicated, and tired. The trial court did not err.

 "The trial judge's determination of whether a statement was knowingly, intelligently, and voluntarily made, requires an examination of 'the totality of the circumstances' surrounding the waiver." *State v. Rochester,* 301 S.C. 196, 200, 391 S.E.2d 244, 247 (1990). "On appeal, the conclusion of the trial judge on issues of fact as to the voluntariness of a confession will not be disturbed unless so manifestly erroneous as to show an abuse of discretion." *Id.* "The South Carolina Supreme Court has rejected the position a minor's inculpatory statement obtained in the absence of counsel, parent, or other friendly adult is per se inadmissible." *In the Interest of Christopher W.,* 285 S.C. 329, 330, 329 S.E.2d 769, 770 (Ct. App.1985). "Instead, the court has adopted a totality of the circumstances test: 'While the age of the individual is a factor to be taken into consideration, the admissibility of a statement or confession of a minor depends upon its voluntariness, to be determined from the totality of the circumstances under which it is made.'" *Id.* at 330–31, 329 S.E.2d at 770.

Here, the trial court found that, under the totality of the circumstances, Avery's confession was voluntarily given. The record fully supports this finding. Avery was informed of his *Miranda* rights, and, after meeting with his mother, signed a written waiver of those rights. Further, Avery issued a written confession of the crime. The trial court thoughtfully considered Avery's age, intellect, and ability to understand his rights before deciding that Avery voluntarily confessed to the crime. The trial court is affirmed on this issue.

## D. Transfer of Jurisdiction

 Avery argues the family court erred in failing to consider the appropriate factors before transferring jurisdiction to the trial court. The family court did not err.

 "The appellate court will affirm a transfer order unless the family court has abused its discretion." *State v. Avery,* 333 S.C. 284, 292, 509 S.E.2d 476, 481 (1998). "The serious nature of the offense is a major factor in the transfer decision." *Id.* "The best interests of the public or of the juvenile may require the juvenile be held accountable as an adult for his criminal conduct." *Id.* at 293, 509 S.E.2d at 481.

Here, the family court carefully considered the eight factors enumerated by the United States Supreme Court in *Kent v. United States,* 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), and condoned by our supreme court. *See State v. Corey D.,* 339 S.C. 107, 118, 529 S.E.2d 20, 27 (2000) ("In evaluating whether the family court abused its discretion [in transferring jurisdiction to the trial court], we consider the *Kent* factors and emphasize that the serious nature of the offense is a major factor in the transfer decision."). The family court considered the *Kent* factors as well as the serious nature of the offense (Avery was charged with murder) before transferring jurisdiction to the trial court. The family court did not abuse its discretion.

### E. Cruel and Unusual Punishment

 Avery argues the transfer from the family court to the trial court violates the Eighth Amendment to the United States Constitution. The transfer was not unconstitutional.

Avery cites *Roper v. Simmons,* 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005), for the proposition that subjecting a minor to a potential life sentence without parole violates the Eighth Amendment to the United States Constitution. *Roper* held that the Eighth Amendment prevented states from executing minors under the age of eighteen. It had nothing to say about whether the Eighth Amendment prevents states from imposing a life sentence without parole on minors under the age of eighteen. In any event, Avery was sentenced to thirty-five years imprisonment, not life without parole. Thus, the issue is a non-starter, and Avery's Eighth Amendment challenge must fail.

### III.

The trial court did not abuse its discretion in denying Avery's motion for change of venue, severance, and suppression of a written confession to law enforcement. The family court did not abuse its discretion in transferring jurisdiction to the circuit court, and the transfer did not violate the Eighth

Amendment to the United States Constitution. The judgments of the trial court and family court are

**AFFIRMED.**

HEARN, C.J., and CURETON, A.J., concur.