495 S.E.2d 191

**STATE of South Carolina, Respondent,**

v.

**Warren Douglas MANNING, Appellant.**

No. 24727.

Supreme Court of South Carolina.

Heard Oct. 9, 1997.

Decided Dec. 29, 1997.

2

South Carolina Office of Appellate Defense, David I. Bruck, Nancy O. Gallman, and John D. Elliott, Columbia; Glenn B. Manning, Dillon; and Charles J. Ogletree, Jr., Cambridge, MA, for appellant.

Attorney General Charles Molony Condon, Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, and Assistant Attorney General Robert F. Daley, Jr., Columbia; and Solicitor C. Gordon McBride, Darlington, for respondent.

BURNETT, Justice:

Appellant appeals his convictions of murder, kidnapping, and armed robbery, and his sentences of death for murder and twenty-five years imprisonment for armed robbery. We reverse.

## ISSUE

Did the lower court abuse its discretion by granting the State's motion to change venue for the selection of the jury?

## DISCUSSION

Appellant contends the lower court abused its discretion by granting the State's motion for a change of venue for jury selection. We agree.

Appellant was convicted of murdering a state highway trooper and was sentenced to death in 1989. His conviction was reversed on appeal. *State v. Manning*, 305 S.C. 413, 409 S.E.2d 372 (1991), *cert. denied*, 503 U.S. 914, 112 S.Ct. 1282, 117 L.Ed.2d 507 (1992) (finding a constitutionally infirm reasonable doubt charge). Appellant was retried in August 1993. A mistrial was declared at the end of the guilt phase of the trial. Appellant was again retried in March 1995. The jury convicted appellant of murder, kidnapping, and armed robbery. Upon recommendation by the jury, which found the statutory aggravating circumstances of kidnapping, robbery while armed with a deadly weapon, physical torture, and murder of a law enforcement officer during or because of the performance of his official duties, the trial judge sentenced appellant to death for the murder.

At the first trial in 1989, on appellant's motion, venue was changed from Dillon County to Kershaw County. Neither appellant nor the State requested a change of venue for the second trial; therefore, in 1993, this trial was held in Dillon County and the jurors were selected from Dillon County. This trial ended in a mistrial because the jurors could not reach a verdict in the guilt phase.

On February 17, 1994, approximately six months after the mistrial, the State filed a motion to change venue, pursuant to S.C.Code Ann. § 17–21–80 (1976), based on pretrial publicity. The motion was heard by Judge Paul M. Burch, Resident Judge of the Fourth Judicial Circuit of South Carolina, on June 8, 1994. At this hearing, the solicitor informed the judge it would be acceptable to retain venue in Dillon County so long as the jury was selected from another county. *See* S.C.Code Ann. § 17–21–85 (Supp.1996).

At the hearing, the solicitor summarized the record of the jury selection at the August 1993 trial. At that trial, 46 of 57 of the prospective jurors questioned on voir dire were found qualified. However, according to the solicitor, 53 of the 57 jurors questioned "had knowledge of the case itself," and

seven of the 46 qualified jurors were related "either to the defendant or to witnesses that were in the trial." The solicitor did not allege that anyone related to either the defendant or any witnesses actually served on the jury. The solicitor did not claim that the August 1993 jury was not impartial or that the State did not receive a fair trial. Further, the solicitor admitted the State did not use all of its peremptory challenges.

The solicitor then presented four witnesses who testified pretrial publicity made it impossible for the State to receive a fair trial by a Dillon County jury.[1] Mary Louise Parham, Dillon County Treasurer and a jury commissioner, initially testified she did not think the State could get a fair and impartial jury panel in Dillon County because of the news coverage. During cross-examination, Ms. Parham admitted the two newspaper articles[2] introduced into evidence tended to show appellant was guilty and, therefore, were prejudicial to the appellant and not the State. She then stated she did not think either the State or appellant could receive a fair trial in Dillon County. Ms. Parham testified it would be hard for a fair trial to take place in Dillon County because the people in Dillon County have knowledge of this case. Ms. Parham stated "I think an opinion *possibly could* have been formed." (emphasis added). However, she admitted a prospective juror could inform the judge if he had formed an opinion on this matter.

Dillon County Sheriff Harold Grice testified appellant's case was the most publicized case during his 18 years in law enforcement. Sheriff Grice opined "the jury pool that would be drawn in Dillon County wouldn't be fair to both sides"

---

1. Appellant claims this testimony does not replace the need for affidavits pursuant to § 17–21–80. However, this Court held where the witnesses are sworn in the presence of the judge and their statements are reduced to a writing by the official stenographer the affidavit requirement is satisfied. *State v. Sullivan* 39 S.C. 400, 17 S.E. 865 (1893).

2. One of these articles was a November 1, 1988 article in the *Dillon Herald* detailing the investigation of the murder. The other article was an August 1993 article in the *Florence Morning News* covering the mistrial. Both articles are factual and neither contained prejudicial or inflammatory information. After introducing these articles, the solicitor did not refer to them again.

because there had been a lot of publicity and it would be difficult to obtain jurors from "certain areas" of the county. On cross-examination, Sheriff Grice was unable to state whether he thought prospective jurors in Dillon County were more likely to be biased in favor of appellant or the State until he saw "the way the jury was pulled." Sheriff Grice admitted very few people sat in the courtroom during the August 1993 trial.

Gwen Hyatt, Clerk of Court for Dillon County and a jury commissioner, testified she did not think a jury pool could be drawn "that would not have knowledge of the two previous trials." On cross-examination, Ms. Hyatt acknowledged the August 1993 jury was chosen before exhausting the venire. She further admitted the trial judge removed any prospective juror who expressed an opinion about the case. Ms. Hyatt predicted another Dillon County jury would probably be partial to both sides.

Cecil Chandler, news director for a Florence television station, testified appellant's case had been extensively covered by his station since 1988. Mr. Chandler opined it would be difficult to draw a jury panel from Dillon County that did not have knowledge of this case. On cross-examination, Mr. Chandler could not point to any station coverage which was prejudicial to the State. Mr. Chandler also admitted there was nothing unfair about a juror knowing about the case.

Defense counsel presented no affidavits or testimony at the hearing. Instead, defense counsel argued the State had failed to prove it could not receive a fair and impartial trial if a jury were selected from residents of Dillon County.

On August 31, 1994, Judge Burch granted the State's motion for a change of venue. Judge Burch found an impartial jury could not be selected from Dillon County because jurors "would have a side and would be tainted with information obtained from the high level of publicity that surrounded the retrial of the case." Judge Burch based his decision on the fact that there was widespread knowledge of this case among the residents of Dillon County and appellant had extensive family in Dillon County. Therefore, pursuant to S.C.Code Ann. § 17–21–85 (Supp.1996), Judge Burch ordered the trial

jury be selected from Lancaster County. Appellant's motion for reconsideration of this order was denied.[3]

Under South Carolina law, the State may request a change of venue because the prosecution cannot receive a fair and impartial trial in the county where the prosecution is commenced. S.C. Const. Art. V, § 23; S.C.Code Ann. § 17–21–80 (1976). The grant of the State's request for a change of venue has not been addressed by this Court.

When considering the propriety of granting the State's request to change venue, other jurisdictions apply the same abuse of discretion standard as is used to review the denial of a defendant's motion to change venue. Erwin S. Barbre, Annotation, *Change of Venue by State in Criminal Case*, 46 A.L.R.3d 295 (1972). We, likewise, conclude the abuse of discretion standard should be applied when the State is granted a change of venue.

Empaneling a jury pursuant to § 17–21–85 is similar in effect to a change of venue and is subject to the same scope of review. *State v. Longworth*, 313 S.C. 360, 438 S.E.2d 219 (1993), *cert. denied*, 513 U.S. 831, 115 S.Ct. 105, 130 L.Ed.2d 53 (1994). A motion to change venue is addressed to the sound discretion of the trial judge and will not be disturbed on appeal absent an abuse of discretion. *State v. Patterson*, 324 S.C. 5, 482 S.E.2d 760, *cert. denied*, — U.S. —, 118 S.Ct. 146, 139 L.Ed.2d 92 (1997); *State v. Caldwell*, 300 S.C. 494, 388 S.E.2d 816 (1990). An abuse of discretion occurs when the judge's ruling has no evidentiary support. *Gooding v. St. Francis Xavier Hosp.*, 317 S.C. 320, 454 S.E.2d 328 (Ct.App. 1995), *affirmed in part, reversed in part*, 326 S.C. 248, 487 S.E.2d 596 (1997). When jurors have been exposed to pretrial publicity, a denial of a change of venue is not error when the jurors are found to have the ability to set aside any impressions or opinions and render a verdict based on the evidence presented at trial. *State v. Patterson, supra; State v. Caldwell, supra.* Therefore, mere exposure to pretrial publicity does not automatically disqualify a prospective juror. *State v.*

---

**3.** Appellant also attempted to seek interlocutory appellate review of this decision. This Court dismissed appellant's appeal by order dated September 22, 1994, and dismissed appellant's petition for supersedeas by order dated March 17, 1995.

*Caldwell, supra.* Instead, "[t]he relevant question is not whether the community remembered the case, but whether the jurors . . . had such fixed opinions that they could not judge impartially the guilt of the defendant." *State v. Tucker,* 324 S.C. 155, 166, 478 S.E.2d 260, 266 (1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1561, 137 L.Ed.2d 708 (1997) (quoting *Patton v. Yount,* 467 U.S. 1025, 1035, 104 S.Ct. 2885, 2891, 81 L.Ed.2d 847, 856 (1984)). The moving party bears the burden of showing actual juror prejudice as a result of such publicity. *State v. Caldwell, supra.* If a change of venue is sought on the basis of pretrial publicity, the general practice is to postpone ruling on that motion until the jury panel is voir dired. *State v. Easler,* 322 S.C. 333, 471 S.E.2d 745 (Ct.App. 1996), *affirmed as modified,* 327 S.C. 121, 489 S.E.2d 617 (1997).

The defendant's right to be tried in the county where the alleged crime was committed is an ancient right and well recognized at common law. 4 William Blackstone, *Commentaries* 349–50. However, this privilege is conditioned upon the possibility of empaneling an impartial jury in that county. *State ex rel. Sullivan v. Patterson,* 64 Ariz. 40, 165 P.2d 309 (1946); *People v. Powell,* 87 Cal. 348, 25 P. 481 (1891). Because the situs of the alleged crime is usually the home of the defendant, this right allows the defendant to surround himself with the influences of his good character, if he has established one, and the witnesses are accessible for the purpose of trial. *State ex rel. Sullivan v. Patterson, supra.* "To deprive a defendant of these influences and privileges would constitute a great injury to him." *Id.,* 165 P.2d at 313.

South Carolina recognizes the accused's right to be tried in the county in which the offense is alleged to have occurred. *State v. Evans,* 307 S.C. 477, 415 S.E.2d 816 (1992) (finding this right is a personal privilege of the accused and is not jurisdictional; therefore, it can be waived); *see also* S.C. Const. art. I, § 11 ("No person may be held to answer for any crime . . . unless on a presentment or indictment of a grand jury of the county where the crime has been committed."). Section 14 of article I of the South Carolina Constitution states "[t]he right of trial by jury shall be preserved inviolate." Other jurisdictions interpreting this phrase have held this phrase preserved all rights and privileges an accused had

concerning jury trials at common law prior to the adoption of the state constitution, including the right to be tried in the county in which the alleged offense occurred. *See People v. Powell, supra.*

Because the right of the State to request a change of venue conflicts with the accused's right to be tried in the county where the alleged offense was committed, these two competing interests must be balanced. *See State ex rel. Sullivan v. Patterson,* 165 P.2d at 313 ("The abuse of the right to change the venue to the detriment of the accused over his objection would result in a serious depredation. . . ."). Further, because a defendant's right to be tried in the county where the alleged offense occurred is defeated when the prosecution's request for a change of venue is granted, a court should exercise great care and deliberation when changing venue at the request of the prosecution, and the state's motion and evidence supporting its motion should be strictly scrutinized to ensure the defendant's right is not abused. *Mast v. Superior Court,* 102 Ariz. 225, 427 P.2d 917 (1967) (lower court should act with great care and deliberation when considering a state's request to change venue); *Commonwealth v. Gelatt,* 481 Pa. 559, 393 A.2d 303 (1978) (a court must strictly scrutinize a prosecutor's change of venue request); *Commonwealth v. Reilly,* 324 Pa. 558, 188 A. 574 (1936) (before a court acts on this type of motion, there must be most imperative grounds).

Judge Burch abused his discretion in granting the State's motion to change venue based on pretrial publicity because no evidentiary facts supported a finding of actual juror prejudice toward the State. The State's witnesses only offered their opinions and conclusions that the State and appellant could not receive a fair trial in Dillon County because most people in Dillon County knew about the case. *See Davenport v. Summer,* 269 S.C. 382, 237 S.E.2d 494 (1977) (conclusory affidavits of local residents insufficient to require change of venue); *Cantey v. Coates,* 262 S.C. 259, 203 S.E.2d 673 (1974) (in deciding whether to change venue, the court cannot rely on the beliefs, opinions and conclusions of witnesses). The witnesses' testimony was ambivalent and vague about which party was prejudiced by the publicity. None of the witnesses could point to any actual prejudice suffered by

the State because of the pretrial publicity. Instead, one witness testified the publicity prejudiced appellant.[4] The newspaper articles were remote in time and showed no prejudice toward the State.

Further, a prospective juror's knowledge about the case does not *per se* disqualify the juror. *See State v. Caldwell, supra.* No evidence was presented indicating there were difficulties in seating a jury in the August 1993 trial or that the August 1993 jury was unfair or partial to the appellant. Judge Burch's decision was made almost seven months before the 1995 trial, and the 1995 trial occurred 1½ years after the 1993 mistrial. *See State v. Tyner,* 273 S.C. 646, 258 S.E.2d 559 (1979) (any prejudice resulting from articles should have diminished by the time of trial). Without voir dire of actual potential jurors, it was impossible to determine an unbiased jury could not be seated from Dillon County residents based on the evidence presented by the State to support its motion.[5] *See State v. Easler, supra; Beckwith v. State,* 386 So.2d 836 (Fla.Dist.Ct.App.1980) (the court must attempt to seat a jury before concluding it is impossible to obtain an impartial jury when deciding a State's motion to change venue over the objection of the defendant). Thus, based on the evidence

---

4. The State claims the judge properly granted its motion to change venue because the appellant could not receive a fair trial in Dillon County. However, we choose not to adopt this argument. The State should not have the responsibility of ensuring the defendant's right to a fair and impartial trial is protected. Further, although in *State v. Hood,* 294 N.C. 30, 239 S.E.2d 802 (1978), the grant of change of venue at the request of the State was upheld because the defendant could not receive a fair trial, that court noted the defendant did not have counsel at the time the motion was made, thus it was proper for the State to protect the defendant's interest. Other jurisdictions have held the State should not seek to protect the defendant's right to a fair and impartial jury by attempting to change venue. *See Mast v. Superior Court, supra.*

5. Although we think the better practice is to attempt to seat a jury prior to ruling on a motion to change venue based on pretrial publicity, it is not absolutely essential that the trial judge always conduct voir dire before granting this motion. However, if the judge considers the motion prior to voir dire, the moving party must demonstrate the facts and circumstances warrant a finding of actual juror bias. Here, the solicitor failed to present any evidence of actual juror bias to support the motion.

presented to support this motion, we find Judge Burch's decision to grant the State's motion premature.

Because we find Judge Burch abused his discretion in granting the State's motion to change venue, we do not reach the other issues raised by appellant.

REVERSED.

FINNEY, C.J., and TOAL, MOORE and WALLER, JJ., concur.