654 S.E.2d 867

The STATE, Respondent,

v.

Anthony WOODS, Appellant.

No. 4319.

Court of Appeals of South Carolina.

Submitted Oct. 1, 2007.

Decided Nov. 30, 2007.

Rehearing Denied Jan. 17, 2008.

126

Appellate Defender Aileen P. Clare, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Senior Assistant Attorney General Norman Mark Rapoport, all of Columbia; and Solicitor Cecil Kelly Jackson, of Sumter, for Respondent.

WILLIAMS, J.:

A jury found Anthony Woods (Woods) guilty of first-degree burglary and two counts of assault and battery of a high and aggravated nature. Woods argues the trial court erred in denying his motion to suppress hair, blood, and saliva samples as the products of an unlawful search and seizure and requests a new trial. We affirm.

## FACTS

On June 4, 2003, Woods broke into the Taylor residence at approximately 11 p.m. Linda Taylor (Linda) testified that on the night of the break-in, she was watching television in the den, which is near the back door. Her mother, Elizabeth Taylor, was getting ready for bed in the bathroom. Linda heard a noise outside, and when she looked through the blinds, she saw the motion sensor lights turn on and noticed Woods standing outside facing her through the window. Linda testified Woods was "bathed in the flood lights," and she could "see him very well."

Woods punched his fist through the window pane of the door, causing his hand and arm to bleed. Although Linda attempted to block the door with her body, Woods eventually

pushed his way into the house and pushed Linda onto a chair in the den. Woods then hit Linda in the face. Linda found her mother lying on the floor after Woods escaped. Thereafter, Linda noticed Woods had stolen the keys to the house and car, pocketbooks, tote bags, and a Bible.

Shortly after the incident, Officer Surette was dispatched to the Taylor residence. As Officer Surette approached the house, he noticed a suspicious person walking away from the Taylor residence. Although Officer Surette could not positively identify Woods at that time, Woods was apprehended in the same area after State Law Enforcement Division (SLED) brought in a bloodhound unit, which picked up Woods' trail. Woods was eventually captured that night and positively identified. Police took Woods to the hospital where he was treated for arm and hand injuries.

On June 6, 2003, SLED Officer Creech approached Judge Cooper in chambers for a court order to obtain samples of Woods' hair, saliva, and blood, which Judge Cooper granted. While Judge Cooper found probable cause existed to issue the order, the State did not establish that Officer Creech submitted a sworn affidavit or made a statement under oath to support the order.

During his trial, several police officers testified for the State, and Linda identified Woods as the man who broke into her residence. After the trial, the jury convicted Woods of first-degree burglary and two counts of aggravated assault and battery. The trial court sentenced Woods to life imprisonment for first-degree burglary and a concurrent ten years imprisonment on each count of aggravated assault and battery. Woods appeals.

## STANDARD OF REVIEW

In criminal cases, this Court reviews errors of law only. *State v. Butler*, 353 S.C. 383, 388, 577 S.E.2d 498, 500 (Ct.App. 2003). Further, we are bound by the trial court's factual findings unless they are clearly erroneous. *Id.*, 577 S.E.2d at 500–01. Appellate review in Fourth Amendment search and seizure cases is limited to determining whether any evidence supports the trial court's finding. *State v. Banda*, 371 S.C. 245, 251, 639 S.E.2d 36, 39 (2006); *see also State v. Baccus*,

367 S.C. 41, 48–49, 625 S.E.2d 216, 220 (2006) ("The trial judge's factual findings on whether evidence should be suppressed due to a Fourth Amendment violation are reviewed for clear error.").

## LAW/ANALYSIS

■ Woods argues the trial court should have suppressed his hair, blood, and saliva samples as the products of an unlawful search and seizure. He contends state officers failed to follow section 17–13–140 of the South Carolina Code (Supp. 2006) in obtaining the court order. We agree.

Section 17–13–140 provides:

A warrant issued hereunder shall be issued only upon affidavit sworn to before the . . . judge of a court of record establishing the grounds for the warrant. If the . . . judicial officer abovementioned is satisfied that the grounds for the application exist or that there is probable cause to believe that they exist, he shall issue a warrant identifying the property and naming or describing the person or place to be searched.

■■ Accordingly, a court order issued pursuant to this section, which stands in place of a search warrant, must be supported by a sworn oath or affirmation to be admissible at trial. *Baccus*, 367 S.C. at 54–55, 625 S.E.2d at 223 ("Following these constitutional requirements, § 17–13–140 requires a sworn affidavit for a search warrant [or a court order] to be issued." (citing U.S. Const. amend. IV; S.C. Const. art. I, § 10)). Furthermore, the affidavit must set forth particular facts and circumstances underlying the existence of probable cause to allow the magistrate to make an independent evaluation of the matter. *Franks v. Delaware*, 438 U.S. 154, 165, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

On June 6, 2003, Officer Creech approached Judge Cooper in chambers for an order to take samples of Woods' hair, blood, and saliva. Two other judges were present in chambers when Officer Creech requested the order. Although Judge Cooper found probable cause to issue the order based on his conversation with Officer Creech, there was no affidavit from Officer Creech to support the court order, and Officer Creech failed to make a statement under oath as required by

section 17–13–140. The State conceded the order was defective on its face. We find the court order failed to comply with statutory guidelines. Consequently, the hair, blood, and saliva samples should have been suppressed.

Despite this error, we affirm Woods' conviction in light of the overwhelming evidence of his guilt. *See, e.g., Baccus,* 367 S.C. at 55, 625 S.E.2d at 223 ("When guilt is conclusively proven by competent evidence, such that no other rational conclusion could be reached, this Court will not set aside a conviction for insubstantial errors not affecting the result.").

Here, the State presented evidence from several different sources. Linda Taylor identified Woods as the assailant and testified in detail about the incident. Woods' fingerprints were found inside the door where he gained entry into the Taylor residence, and his hand injuries were consistent with having broken the glass window. Officer Surette also testified he observed a suspicious person exiting the driveway of the Taylor residence who fled into the same area that officers secured after the break-in. Bloodhounds then tracked Woods down within this secured area. Finally, the police found several items stolen from the Taylor's residence along the trail where officers tracked Woods. Therefore, we find the hair, blood, and saliva samples cumulative, and their admission is not grounds for reversal of Woods' conviction.

## CONCLUSION

Although the trial court erred in denying Woods' motion to suppress pursuant to section 17–13–140, such error was harmless in light of the overwhelming evidence establishing his guilt. Accordingly, the trial court's decision is

**AFFIRMED.**[1]

STILWELL and SHORT, JJ., concur.

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.