676 S.E.2d 128

**The STATE, Respondent,**

v.

**Anthony WOODS, Appellant.**

**No. 26623.**

Supreme Court of South Carolina.

Heard Feb. 3, 2009.
Decided March 30, 2009.
Rehearing Denied May 13, 2009.

154

Chief Appellate Defender Joseph L. Savitz, III, of South Carolina Commission on Indigent Defense, of Columbia, and Frederick A. Hoefer, II, of Ballenger Barth & Hoefer, of Florence, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, Senior Assistant Attorney General William Edgar Salter, III, all of Columbia, and Solicitor Cecil Kelly Jackson, of Sumter, for Respondent.

Justice WALLER.

Appellant, Anthony Woods, was convicted of murder, first degree burglary and criminal sexual conduct (CSC). He was sentenced to death for murder, thirty years for CSC, and life imprisonment without parole (LWOP) for burglary, the sentences to run consecutively. We affirm the convictions and sentences.

## FACTS

Joanne Dubose, a fifty-three year old Manning school teacher, was last seen alive on Monday, June 2, 2003. When Dubose did not answer telephone calls for several days, a friend went to check on her Wednesday evening, June 4, 2003,

and found Dubose lying on her bed, face up, with blood running off the side of her face. The friend called 911, and police arrived to find Dubose dead, with a sheet tied around her neck, and her right arm tied down; her legs were spread under the sheet, her tongue was protruding from her mouth, and her face was beginning to decompose.

In the early morning hours of June 5, 2003, Woods was arrested in connection with a burglary the previous evening of the residence of Linda Taylor, another Clarendon County woman.[1] A shoeprint impression taken from the shoes Woods was wearing at the time of his arrest was ultimately determined to be consistent with a shoeprint lifted from the floor of Dubose's bedroom. DNA testing on the mattress pad and sheet from Dubose's bed revealed semen which matched Woods' DNA profile. A pathologist determined Dubose died from asphyxiation due to strangulation, and that she had been dead for approximately two days, indicating she died on June 3, 2003. The pathologist found no evidence of sexual trauma, but testified decomposition could have affected the ability to detect such trauma.

Woods was indicted and charged with murder, first degree burglary, and first degree CSC. The state sought the death penalty based upon the aggravating circumstances of burglary and criminal sexual conduct. Woods' first trial, utilizing a jury pool from Marion County, ended in a hung jury and a mistrial in September 2006. Upon retrial in December 2006, a jury was selected from Clarendon County, and Woods was convicted on all counts; the jury recommended a sentence of death.

## ISSUES

1. Did the trial court err in utilizing a jury pool from Clarendon County, rather than Marion County?

---

1. The Court of Appeals subsequently affirmed Woods' convictions for first degree burglary and two counts of assault and battery of a high and aggravated nature in conjunction with the Linda Taylor offense. *State v. Woods*, 376 S.C. 125, 654 S.E.2d 867 (Ct.App.2007), *cert. denied* Oct. 23, 2008. Woods was also tried and convicted of burglary, armed robbery and assault and battery with intent to kill in connection with a May 27, 2003 attack upon an eighty-four year old Clarendon County woman named Laura Jackson. These convictions were recently affirmed by the Court of Appeals. *State v. Woods*, Op. No.2008–UP–536 (S.C. Ct.App. filed Sept. 16, 2008).

2. Did the trial court err in excusing a black female potential juror for cause?

## 1. JURY POOL

Prior to Woods' first trial in 2006, he requested a change of venue due to extensive pre-trial publicity and the fact that the Victim was a well-known teacher who had taught in Clarendon County public schools. With the state's consent, the trial judge granted the motion and ruled a jury would be selected from Marion County and transported to Clarendon County for trial. Trial took place in September 2006 and ended in a hung jury and a mistrial.

When the case was called for re-trial in October 2006, the state withdrew its consent to the change of venue. The state took the position that the mistrial resulted in going back to "ground zero." Defense counsel contended the state's consent to the change of venue in the first trial was binding, such that venue remained proper in Marion. The trial judge ruled he would endeavor to empanel a jury in Clarendon County before moving jury selection elsewhere.[2] After a lengthy *voir dire* process, a jury was selected in Clarendon County, and Woods was tried in December 2006; he was convicted on all counts and sentenced to death. Woods now argues it was reversible error for the trial court to transfer jury selection from Marion County back to Clarendon County. We disagree.

When a trial judge grants or denies a motion for a change of venue after adequate *voir dire* of prospective jurors, the decision will not be overturned absent extraordinary circumstances. *State v. Evins*, 373 S.C. 404, 645 S.E.2d 904, *cert. denied* — U.S. ——, 128 S.Ct. 662, 169 L.Ed.2d 521 (2007). The moving party has the burden of demonstrating actual juror prejudice. *State v. Caldwell*, 300 S.C. 494, 388 S.E.2d 816 (1990).

---

2. The judge specifically noted the primary reason he had granted the motion to change venue in the first trial was due to the state's consent, and the fact that the state wanted to be able to complete the trial in September 2006, before one of the solicitors was leaving to become a judge. The court ruled that if it had not been for this consideration, the motion to move the trial to Marion County would have been denied.

158

A mistrial is the equivalent of no trial and leaves the cause pending in the circuit court. *State v. Smith*, 336 S.C. 39, 518 S.E.2d 294 (Ct.App.1999). It leaves the parties "as though no trial had taken place." *Grooms v. Zander*, 246 S.C. 512, 514, 144 S.E.2d 909, 910 (1965) (rulings of trial judge in proceeding ending in mistrial represent no binding adjudication upon the parties as the mistrial leaves the parties in status quo ante). A court ruling as to admissibility and competency of testimony during a trial which is later declared a mistrial results "in no binding adjudication of the rights of the parties." *Keels v. Powell*, 213 S.C. 570, 572, 50 S.E.2d 704, 705 (1948).

In *State v. Manning*, 329 S.C. 1, 495 S.E.2d 191 (1997), upon a retrial in a capital case, the trial court granted the state's motion to change venue from Dillon County to Kershaw County. On appeal, this Court held the trial court "abused his discretion in granting the State's motion to change venue based on pretrial publicity because no evidentiary facts supported a finding of actual juror prejudice toward the State." *Id.* at 9, 409 S.E.2d at 195. However, we noted that "we think the **better practice is to attempt to seat a jury prior to ruling on a motion to change venue** based on pretrial publicity." *Id.* (Emphasis supplied).

Here, the case having resulted in a mistrial, it was a nullity and therefore began anew when called again for trial. *State v. Mills*, 281 S.C. 60, 314 S.E.2d 324, *cert. denied* 469 U.S. 930, 105 S.Ct. 324, 83 L.Ed.2d 261 (1984) (when mistrial occurs because of inability of jury to agree on verdict, it is the same as if no trial took place). Accordingly, the trial court properly exercised its discretion in attempting to seat a jury from Clarendon County prior to ruling on the motion to change venue.

Inasmuch as the trial court was able to select an unbiased jury pursuant to our mandate in *Manning*, we find no error. *Accord State v. Evins*, 373 S.C. 404, 645 S.E.2d 904, (2007) (grant or denial of change of venue after adequate *voir dire* of prospective jurors will not be overturned absent extraordinary circumstances).

## 2.  EXCUSAL OF JUROR FOR CAUSE

■   Woods next asserts the trial court erred in excusing Juror Carolyn Hilton for cause.  We disagree.

■     A prospective juror may be excluded for cause when his or her views on capital punishment would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.  *State v. Evins,* 373 S.C. 404, 645 S.E.2d 904 (2007); *State v. Sapp,* 366 S.C. 283, 621 S.E.2d 883 (2005), *cert. denied* 547 U.S. 1133, 126 S.Ct. 2025, 164 L.Ed.2d 787 (2006).  When reviewing the trial court's qualification or disqualification of prospective jurors, the responses of the challenged juror must be examined in light of the entire *voir dire.  Id.* The determination whether a juror is qualified to serve in a capital case is within the sole discretion of the trial judge and is not reversible on appeal unless wholly unsupported by the evidence.  *Id.* A juror's disqualification will not be disturbed on appeal if there is a reasonable basis from which the trial court could have concluded the juror would not have been able to faithfully discharge his responsibilities as a juror under the law.  *State v. Green,* 301 S.C. 347, 392 S.E.2d 157, *cert. denied* 498 U.S. 881, 111 S.Ct. 229, 112 L.Ed.2d 183 (1990).  Deference must be paid to the trial court who saw and heard the juror.  *Id.* There will be situations where a trial court is left with the definite impression a prospective juror would be unable to faithfully and impartially apply the law, and this is why deference must be paid to the trial court.  *Wainwright v. Witt,* 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985).

During *voir dire,* Juror Hilton was questioned extensively concerning her views on capital punishment.  When initially questioned about which type of juror she would be,[3] she indicated she would always vote for life imprisonment.  When the three types of jurors were explained to her again, she indicated she would be the third type of juror, indicating she would wait and see before deciding on punishment.  When the trial court questioned her as to whether, if they got to a

---

**3.**  The trial court gave the jury a sheet listing the three types of jurors: 1) would always vote for death, 2) would always vote for life, or 3) would wait and hear facts and circumstances before deciding on punishment.

sentencing phase, she could consider a life sentence, she responded, "yes." However, when the court went further and questioned if, depending on the facts and circumstances, she could vote to return a verdict imposing the death penalty, she replied, "no." The lawyers then questioned Juror Hilton and she reiterated to the solicitor that she could not vote for the death penalty. She continued to maintain she would vote for life and could not vote for death. After some vacillation, she indicated she would not feel comfortable signing a death verdict.

Defense counsel then examined Juror Hilton, advising her that all twelve jurors would have to sign beyond a reasonable doubt to vote for a sentence of death. Hilton replied she "guessed" she could vote for such a sentence. When questioned whether she could, after the vote occurred, confirm her vote on the verdict form, she again replied, "I guess." After further *voir dire* and much vacillation, Juror Hilton ultimately maintained she was a type three juror, and felt she could vote for a death sentence and sign the death verdict.

The trial court then meticulously reflected on whether Juror Hilton was qualified; the judge was clearly concerned that Juror Hilton's initial responses seemed adamant in stating she could not vote to impose a death sentence. The trial court felt her initial responses that she would not vote for a death sentence did not reflect any real confusion. The trial judge ultimately ruled that he would re-read the transcript of Juror Hilton's testimony before making a ruling the next day.

When she was discharged for the evening, Juror Hilton was advised to go home and to call a recorded message after 6:00 p.m. the following night to find out when she was to return to the courthouse. She was also told that when she returned, she was to bring with her enough clothing and personal items to stay for the seven to ten day duration of trial. The next day, the Clerk advised the trial judge that Juror Hilton had not come to court, and they had to go out and find her. She also failed to bring any clothing or personal items.

After further *voir dire*, the trial court ruled Juror Hilton was not qualified to serve, both because of her vacillation over the death penalty, and because of her inability to follow the court's instructions.

Woods now asserts Juror Hilton was improperly disqualified inasmuch as her views reflect an ability to recommend the death penalty in an appropriate case. We disagree.

Initially, Woods does not challenge the trial court's alternate basis for removing Juror Hilton, i.e., that she would not follow simple instructions. Accordingly, the ruling is the law of the case and there is no basis for reversal. *Sloan v. S.C. Dep't of Transp.*, 365 S.C. 299, 618 S.E.2d 876 (2005); *South Carolina Tax Comm'n v. Gaston Copper Recycling Corp.*, 316 S.C. 163, 447 S.E.2d 843 (1994) (failure to appeal an alternative ground of judgment below will result in affirmance).

In any event, the trial court acted within its discretion in disqualifying the juror. *Accord State v. Sapp*, 366 S.C. 283, 621 S.E.2d 883 (2005), *citing Commonwealth v. Duffey*, 579 Pa. 186, 855 A.2d 764 (2004) (where *voir dire* indicated juror was somewhat unclear as to her convictions regarding imposition of the death penalty, and these concerns could have substantially impaired her ability to function as an impartial juror, the trial court was in the best position to make that determination and did not abuse its discretion in dismissing the prospective juror for cause); *State v. Green, supra* (the determination of whether a juror is qualified to serve on a death penalty case is within the sole discretion of the trial judge and is not reversible on appeal unless wholly unsupported by the evidence). The trial court's ruling on this issue is affirmed.[4]

---

4. The remaining issues are affirmed pursuant to Rule 220(b)(1), SCACR, and the following authorities: Woods' Issue 3–*Nix v. Williams*, 467 U.S. 431, 446–47,104 S.Ct. 2501, 81 L.Ed.2d 377 (1984); *State v. McCord*, 349 S.C. 477, 562 S.E.2d 689 (Ct.App.2002) (exclusion of physical evidence not required in cases of inevitable discovery); *State v. Gaines*, 380 S.C. 23, 667 S.E.2d 728 (2008) (admission of evidence is harmless where it is cumulative); Woods' Issue 4–*State v. Stone*, 285 S.C. 386, 387, 330 S.E.2d 286, 287 (1985) (failure to object to charge as given, or request additional charge waives right to complain on appeal); *State v. Cutro*, 365 S.C. 366, 618 S.E.2d 890 (2005) (no error to refuse a charge on mere suspicion where trial court's charge adequately instructs jury regarding reasonable doubt); Woods' Issue 5–*State v. Skipper*, 285 S.C. 42, 328 S.E.2d 58 (1985) *rev'd on other grounds* 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986) (*Stewart* limiting instruction required only where defendant not convicted in guilt phase of crime relied on by State as statutory aggravating circumstance); *State v.*

162

## PROPORTIONALITY REVIEW

We have conducted a proportionality review pursuant to S.C.Code Ann. § 16–3–25(C) (2003). We find the death sentence was not the result of passion, prejudice, or any other arbitrary factor. Furthermore, a review of prior cases shows the death sentence in this case is proportionate to that in similar cases and is neither excessive nor disproportionate to the crime. See *State v. Stanko*, 376 S.C. 571, 658 S.E.2d 94, *cert. denied* —— U.S. ——, 129 S.Ct. 182, 172 L.Ed.2d 129 (2008); *State v. Evins*, 373 S.C. 404, 645 S.E.2d 904 (2007); *State v. Hughes*, 336 S.C. 585, 521 S.E.2d 500 (1999), *cert. denied* 529 U.S. 1025, 120 S.Ct. 1434, 146 L.Ed.2d 323 (2000); *State v. Johnson*, 306 S.C. 119, 410 S.E.2d 547 (1991), *cert. denied*, 503 U.S. 993, 112 S.Ct. 1691, 118 L.Ed.2d 404, (1992); *State v. South*, 285 S.C. 529, 331 S.E.2d 775, *cert. denied* 474 U.S. 888, 106 S.Ct. 209, 88 L.Ed.2d 178 (1985).

Woods' convictions and sentences are affirmed.

**AFFIRMED.**

TOAL, C.J., PLEICONES, BEATTY and KITTREDGE, JJ., concur.

*Avery*, 333 S.C., 284, 509 S.E.2d 476 (1998) (failure to object to jury charge precludes consideration on appeal).