# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Petitioner,

v.

Kierin Marcellus Dennis, Respondent.

Appellate Case No. 2024-002019

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Lexington County
Eugene C. Griffith Jr., Circuit Court Judge

---

Opinion No. 28314
Heard September 24, 2025 – Filed January 28, 2026

---

## REVERSED AND REMANDED

---

Attorney General Alan McCrory Wilson, Deputy Attorney General Donald J. Zelenka, Senior Assistant Deputy Attorney General Melody Jane Brown, and Senior Assistant Attorney General J. Anthony Mabry, all of Columbia, for Petitioner.

Senior Appellate Defender Lara Mary Caudy, of Columbia, for Respondent.

---

**CHIEF JUSTICE KITTREDGE:** In this appeal, Respondent Kierin Marcellus Dennis asks the Court to consider whether a criminal defendant is entitled to a

second immunity hearing under the Protection of Persons and Property Act[1] (the Act) following a mistrial.  In answering that question, the court of appeals held that Dennis was entitled to a new immunity hearing under the Act.  As we will explain, there is no second immunity hearing following a mistrial, and accordingly, the court of appeals' decision is reversed.

The Act confers immunity from prosecution upon those lawfully justified in using deadly force, with such immunity being determined through a pre-trial immunity hearing.  If immunity is denied, the State's prosecution may proceed.  Because an immunity hearing functions as an independent proceeding, we find the grant of a mistrial does not entitle a criminal defendant to a second immunity hearing under the Act.  Rather, mistrials entitle defendants to a new *trial*.  The new trial necessarily requires the trial court to revisit evidentiary rulings and other matters that have a direct nexus to the trial itself.  An immunity hearing under the Act, however, in no way determines the admission of evidence at trial, nor does it impact the factfinder's determination of whether the State has established the defendant's guilt beyond a reasonable doubt.  Because the court of appeals found a second immunity hearing was required in Dennis's case, we reverse and remand this case to the court of appeals for further consideration of the remaining issues on appeal which the court of appeals declined to address in its initial decision.

## I.

## A.

The State indicted Dennis for murder for the stabbing death of Da'Von Capers (the victim) during a chaotic encounter between fans of two rival high schools following a basketball game.  Dennis claimed he stabbed the victim in self-defense, and therefore, he was entitled to immunity from prosecution.

At the pre-trial immunity hearing, the State's witnesses testified that following the basketball game, Dennis encouraged fans of the rival school to meet him at a local fast-food restaurant because he "had something" for them.  Dennis and his friends went to the restaurant, as did several rival fans, including the victim.  This initial interaction was largely uneventful, as the rival fans only mildly taunted Dennis's group as they ordered their food.

---

[1] S.C. Code Ann §§ 16-11-410 to -450 (2015).

The situation changed, however, as the rival groups exited to the restaurant's parking lot, apparently preparing to leave. As Dennis's group began driving away, one of his friends (the other driver), who had driven separately, rolled down his window, threw a pile of change at the group of rival fans, and yelled, "[T]his is all y'all are worth." The rival fans rushed to collect the coins while the other driver edged towards the exit. Witnesses claim that Dennis then drove aggressively towards the group collecting the coins, nearly striking three of them. After Dennis stopped his vehicle, several rival fans (including the victim) surrounded his driver's side window but did not touch the vehicle or reach inside. Dennis yelled, "[B]ack up or I'll hurt you," and "[Y]ou don't want what I got." Seeing Dennis surrounded, the other driver grabbed a metal pipe and exited his own vehicle, starting towards the crowd. Based on some of the testimony at the hearing, before the other driver arrived, Dennis retrieved a knife from inside his own vehicle, reached his hand outside the car, and stabbed the victim in the chest before driving away.

Dennis's witnesses presented a different version of events. They claimed that after the other driver threw the money at the crowd, several rival fans surrounded the other driver's vehicle as if to attack him. Dennis, believing the other driver needed his help, drove towards the other driver's vehicle to try to disperse the crowd. Rather than disperse, the crowd surrounded Dennis's vehicle and began reaching inside. Dennis claimed he grabbed a knife from the center console, reached across his body, and stabbed the victim, who was partially inside Dennis's vehicle. Dennis then fled the parking lot with his friends and later buried the weapon in his backyard.

At the close of the immunity hearing, the circuit court (Judge Russo) issued an order denying Dennis immunity from prosecution and allowed the case to proceed to trial. In particular, Judge Russo found Dennis *failed* to prove by a preponderance of the evidence that: (1) the victim had or was in the process of unlawfully and forcefully entering Dennis's vehicle; (2) Dennis knew or had reason to believe the victim had unlawfully and forcefully entered his vehicle or that such entry and unlawful act was about to occur; and (3) Dennis was without fault in bringing on the difficulty.[2]

---

[2] As discussed in more detail below, at an immunity hearing, the trial court serves as the factfinder. The burden of proof is on the accused at the immunity hearing to establish his entitlement to self-defense by a preponderance of the evidence. *See State v. Andrews*, 427 S.C. 178, 181, 830 S.E.2d 12, 13 (2019) (per curiam). At trial, the burden shifts to the State to disprove the elements of self-defense beyond a reasonable doubt. *See State v. Dickey*, 394 S.C. 491, 499, 716 S.E.2d 97, 101 (2011).

In support of his ruling, Judge Russo made extensive factual findings. For instance, Judge Russo noted that although one witness "standing a few dozen feet" away from the stabbing testified to seeing what appeared to be several rival fans reaching inside Dennis's vehicle, several other witnesses testified that no rival fan ever struck or reached inside Dennis's vehicle before the stabbing. Judge Russo further emphasized the fact that forensic analysts found no fingerprints other than Dennis's inside the vehicle. Further, Judge Russo noted that Dennis drove aggressively towards the crowd of rival fans "at an accelerated rate of speed" and "with a weapon at his side." Finally, Judge Russo stated that, although Dennis testified that he could not leave the parking lot once he pulled next to the crowd of rival fans, video from the scene showed multiple cars driving past Dennis and exiting the parking lot without difficulty.

## B.

At Dennis's ensuing trial, self-defense was the central issue. The jury was unable to reach a unanimous verdict, and the trial court declared a mistrial. When the State sought to retry Dennis for murder, he in turn sought a second immunity hearing, arguing the mistrial entitled him to a new immunity hearing under the Act. Dennis alternatively argued that, even if the mistrial did not entitle him to a new immunity hearing, he should still receive a second immunity hearing to introduce new evidence that was presented during the first trial which could support his immunity claim. The State disagreed, arguing Judge Russo's order denying Dennis immunity was final and remained binding even after the mistrial.

Out of an abundance of caution, the circuit court (Judge Hood) delayed ruling on Dennis's request for a new hearing and permitted him to introduce all his "new" evidence. After considering this new evidence, as well as the transcripts from Judge Russo's immunity hearing and Dennis's first trial, Judge Hood denied Dennis's request to conduct a new immunity hearing and issued an order again denying him immunity under the Act. Dennis proceeded to a second trial, where the jury convicted him of murder.

## C.

Dennis appealed his conviction to the court of appeals, arguing, in relevant part, that (1) Judge Hood erred in failing to conduct a new immunity hearing after his mistrial; and (2) Judge Russo abused his discretion in denying Dennis immunity under the

Act.[3]  The court of appeals reversed, holding Judge Hood improperly denied Dennis's request for a new hearing under the Act.  *State v. Dennis*, 444 S.C. 353, 907 S.E.2d 142 (Ct. App. 2024).  The court reasoned that a mistrial effectively nullifies the entire trial, including any rulings decided at or before trial.  As a result, the court concluded that Judge Hood should have conducted a new immunity hearing following the mistrial rather than rely on the factual and legal findings made by Judge Russo.  In finding this issue dispositive, the court of appeals made no holding regarding the propriety of the merits of Judge Russo's order denying Dennis immunity under the Act.

We granted a writ of certiorari to review the court of appeals' decision.

## II.

The State argues the court of appeals erred in concluding the mistrial entitled Dennis to a new immunity hearing under the Act.  We agree.

A mistrial is appropriate where, as here, a jury is deadlocked and unable to reach a unanimous verdict.  *See State v. Robinson*, 360 S.C. 187, 193, 600 S.E.2d 100, 103 (Ct. App. 2004).  Once granted, a mistrial effectively places parties in the same position as if no trial had occurred at all.  *See Grooms v. Zander*, 246 S.C. 512, 514, 144 S.E.2d 909, 910 (1965) (explaining the rulings of a trial judge in a proceeding ending in mistrial do not become a binding adjudication on the parties as the mistrial "leaves the cause pending in the circuit court"); *see also, e.g.*, *State v. Woods*, 382 S.C. 153, 158, 676 S.E.2d 128, 131 (2009) ("A court ruling as to admissibility and competency of testimony during a trial which is later declared a mistrial results in no binding adjudication of the rights of the parties." (cleaned up) (quoting *Keels v. Powell*, 213 S.C. 570, 572, 50 S.E.2d 704, 705 (1948))).

This Court has repeatedly emphasized that, when a mistrial is granted, the parties must relitigate any prior rulings or matters inextricably linked to the trial itself.  *See Floyd v. Page*, 124 S.C. 400, 402, 117 S.E. 409, 409 (1923) (noting a mistrial leaves

---

[3] Dennis additionally argued the trial court erred in admitting both an aerial photograph of the restaurant and a model car door of his Ford Explorer at the second trial.  The court of appeals did not address these two issues after finding Dennis's mistrial issue dispositive.  *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not address remaining issues on appeal when its determination of a prior issue is dispositive).

the parties in the same position as if no trial existed at all, with "[t]he rulings of the trial judge in the court below having eventuated in no binding adjudication of the rights of the parties"). This includes, for instance, motions to suppress evidence, motions to change venue, and anything similarly related to how the parties may or may not conduct themselves at trial. *See State v. Smith*, 336 S.C. 39, 43–44, 518 S.E.2d 294, 296–97 (Ct. App. 1999) (holding a trial judge could not rely on evidentiary rulings from a prior mistrial and, therefore, had to conduct a new in-camera hearing on an in-court identification at the defendant's subsequent trial); *see also Grooms*, 246 S.C. at 515, 144 S.E.2d at 910 ("The motion for a directed verdict could not be granted after the termination of the trial for the obvious reason that there was no jury to which an instruction for the defendant could have been given. Therefore, the request the defendant's rights under the motion be preserved was nugatory.").

This is not say, however, that every ruling issued before a defendant's trial must be relitigated after a mistrial. On the contrary, a circuit court may issue rulings before trial that bear no connection to and have no effect on the trial itself. *See Enoree Baptist Church v. Fletcher*, 287 S.C. 602, 603–04, 340 S.E.2d 546, 547 (1986) (holding that, after a mistrial, the trial judge did not have the authority to overrule the prior judge's ruling permitting the plaintiff to proceed on an amended complaint before trial). These types of rulings survive a mistrial and remain binding on the parties even after the trial process starts again. *See id.* ("The effect of [the trial court's] order was to reverse the earlier substantive order [permitting the amended complaint], clearly an impermissible act." (internal footnote omitted)).

The dispute here lies with whether a decision regarding immunity under the Act falls within the former camp of rulings, which must be relitigated after a mistrial, or the latter camp of rulings, which survive a mistrial and remain binding on the parties. We find an immunity ruling falls squarely within the latter camp and remains binding on the parties even after a mistrial is declared.

As noted at the outset, an immunity hearing functions as an independent proceeding designed to determine only whether a defendant is entitled to immunity from prosecution. *See State v. Duncan*, 392 S.C. 404, 410, 709 S.E.2d 662, 665 (2011). In that respect, there is nothing decided at an immunity hearing that will later dictate how the parties may or may not conduct themselves at trial. For instance, if immunity is denied, a defendant can freely present or abandon his or her self-defense claim at trial without limitation. *See State v. Cervantes-Pavon*, 426 S.C. 442, 451, 827 S.E.2d 564, 569 (2019) ("Of course, at the conclusion of any given hearing, if the circuit court determines the movant has not met his burden of proof as to

immunity, the case will go trial, and the issue of self-defense may—depending upon the evidence presented at trial—be presented to the trial jury."). Further, the Act in no way precludes the parties from altering the arguments or evidence presented at the immunity hearing to better fit the strategies adopted at trial. *Cf. Council v. State*, 380 S.C. 159, 175, 670 S.E.2d 356, 364 (2008) (emphasizing that, in the context of death penalty cases, it is not inconsistent for trial counsel to argue during the guilt phase of trial that the defendant was not the actual perpetrator of the crime but then present mitigating evidence during the penalty phase of trial). If anything, the evidence presented at trial will often part company with the evidence previously presented at the immunity hearing.[4] The incongruence between the evidence presented at the immunity hearing versus the trial further aligns with the fact that immunity hearings are held months, if not years before, a defendant's trial, often in front of circuit court judges who may not ultimately preside over the defendant's trial.[5]

These characteristics are especially borne out when compared to those of other rulings tied to the conduct at trial, like, for instance, a ruling on the admission of evidence. A pre-trial ruling on the admission or suppression of evidence necessarily implicates a mechanic of trial: how the parties can or cannot present evidence. An immunity ruling, however, does not share that distinction. When the circuit court denies immunity under the Act, the parties are still left in the same position regarding how they can conduct themselves or present their case at trial. Indeed, no evidence has been conclusively excluded or admitted; no argument has been foreclosed or permitted; and the defendant may, if he chooses to, present the same self-defense claim he did at the immunity hearing, or he may not. Simply put, we find an immunity hearing is unaffected by a subsequent deadlocked jury resulting in a mistrial.[6]

---

[4] For example, defense counsel may not call a witness to testify at the immunity hearing that he may otherwise later call during trial, or vice versa. Another illustration of this occurs when a defendant elects to testify at the immunity hearing but not at trial, or vice versa.

[5] We find this distinction especially relevant here. The first immunity hearing occurred before Judge Russo in November 2014, but Dennis's first trial did not commence until October 2016—nearly two years later. Relatedly, Dennis presented his claims for immunity before Judge Russo (for the first hearing) and Judge Hood (for the second hearing), neither of whom presided over either of Dennis's trials.

[6] It is true, of course, that because immunity hearings are held months or years before

Accordingly, we hold the court of appeals erred in finding Dennis was entitled to a second immunity hearing under the Act.[7]

## III.

We next turn to the propriety of the merits of Judge Russo's denial of immunity at Dennis's first (and only) immunity hearing.

"Circuit courts utilize pretrial hearings to determine whether a defendant is entitled to immunity under the Act, employing a preponderance of the evidence standard." *Cervantes-Pavon*, 426 S.C. at 449, 827 S.E.2d at 567 (citation omitted). "This Court, in turn, reviews an immunity determination for an abuse of discretion." *State v. McCarty*, 437 S.C. 355, 365, 878 S.E.2d 902, 908 (2022) (citation omitted). A circuit court abuses its discretion when its ruling "is based on an error of law or, when grounded in factual conclusions, is without evidentiary support." *Id.* (quoting *State v. Jones*, 416 S.C. 283, 290, 786 S.E.2d 132, 136 (2016)).

To obtain immunity under the Act, a defendant must establish by a preponderance of the evidence that his use of deadly force was justified. *Duncan*, 392 S.C. at 411, 709 S.E.2d at 665. To do so, the defendant must establish the four elements of self-defense: (1) he was "without fault in bringing on the difficulty," (2) he "actually believed he was in imminent danger of losing his life or sustaining serious bodily injury;" (3) "a reasonably prudent [person] of ordinary firmness and courage would have entertained the same belief;" and (4) he "had no other probable means of avoiding the danger" other than to act as he did. *State v. Glenn*, 429 S.C. 108, 116, 838 S.E.2d 491, 495 (2019) (quoting *Dickey*, 394 S.C. at 499, 716 S.E.2d at 101); *see also State v. Scott*, 424 S.C. 463, 468–69, 819 S.E.2d 116, 118 (2018) ("There

---

the actual trial, new evidence may be discovered in the interim, and the new evidence could support or contradict the circuit court's prior ruling on immunity. While new evidence undoubtedly will affect the parties' strategic decisions and ability to present their cases at trial, it does not alter—or otherwise entitle the defendant to question— the finality of the circuit court's prior ruling on immunity. We say this without disturbing our prior holding that an order denying immunity under the Act is not immediately appealable under S.C. Code Ann. § 14-3-330(1) (2017). *See State v. Isaac*, 405 S.C. 177, 183, 747 S.E.2d 677, 679 (2013).

[7] While unnecessary to our resolution of this case, we additionally note Dennis effectively received a second immunity hearing before Judge Hood.

are four elements that must be established to justify the use of deadly force as self-defense[, and the defendant] bears the burden of proving these elements by the preponderance of the evidence [in an immunity hearing]." (citations omitted)). If the defendant has failed to satisfy the second or fourth elements above, "the court should then determine whether section 16-11-440(A) or (C) [of the Act] is applicable." *Glenn*, 429 S.C. at 118, 838 S.E.2d at 496.

Section 16-11-440 of the Act provides, in relevant part:

> (A) A person is presumed to have a reasonable fear of imminent peril of death or great bodily injury to himself or another person when using deadly force that is intended or likely to cause death or great bodily injury to another person if the person:
>
> > (1) against whom the deadly force is used is in the process of unlawfully and forcefully entering, or *has unlawfully and forcibly entered* a dwelling, residence, *or occupied vehicle*, or if he removes or is attempting to remove another person against his will from the dwelling, residence, *or occupied vehicle*; and
> >
> > (2) who uses deadly force knows or has reason to believe that an unlawful and forcible entry or unlawful and forcible act is occurring or has occurred.
>
> . . . .
>
> (C) A person who is not engaged in an unlawful activity and who is attacked in another place where he has a right to be . . . has no duty to retreat and has the right to stand his ground and meet force with force, including deadly force, if he reasonably believes it is necessary to prevent death or great bodily to injury to himself . . . .

(Emphasis added).

Here, although there is conflicting evidence presented as to what exactly occurred during the altercation at the restaurant, the record contains sufficient evidence to support Judge Russo's factual findings, which in turn supports the denial of immunity under subsections (A) and (C) of section 16-11-440. For example, multiple witnesses testified that Dennis invited the victim and his friends to the restaurant to settle any hard feelings after the game. These witnesses further stated

that Dennis aggressively drove his vehicle towards a group of rival fans before he began shouting at the crowd, warning them—more than once—that they "don't want what [he] got." Likewise, multiple witnesses testified that Dennis reached his hand outside the car window to stab the victim. These same witnesses also noted that the victim never reached inside the vehicle before the stabbing. Indeed, the forensic analysts did not recover any fingerprints inside the vehicle besides Dennis's. Finally, although Dennis claimed he could not leave the scene because the rival fans had surrounded his vehicle, various witnesses and surveillance videos indicated that multiple vehicles safely drove past Dennis's vehicle as he sat stationary in his own car.

Viewed together, because there is evidence to support Judge Russo's finding that Dennis did not establish the elements of self-defense by a preponderance of the evidence, Judge Russo did not abuse his discretion in denying Dennis immunity under the Act.

## IV.

In sum, we hold the court of appeals erred in finding Dennis was entitled to an entirely new, second immunity hearing under the Act following the mistrial. We further hold that, on the merits, Judge Russo did not abuse his discretion in denying Dennis immunity under the Act. We therefore reverse the court of appeals' decision and remand the case to the court of appeals to decide the two remaining issues on appeal.

**REVERSED AND REMANDED.**

**FEW, JAMES, HILL and VERDIN, JJ., concur. FEW, J., concurring in a separate opinion. JAMES, J., concurring in a separate opinion in which HILL, J., concurs.**

**JUSTICE FEW:** I concur with the majority opinion, particularly the decision to not address the issue Justice James raises in his opinion. However, because Justice James raises the issue and writes that "the defendant would be entitled to a second immunity hearing under certain circumstances," I am persuaded to state that I respectfully disagree with Justice James. As the majority explains in detail, "an immunity hearing is unaffected by a subsequent deadlocked jury resulting in a mistrial." It necessarily follows from this reasoning that the trial court's ruling on a request for immunity under the Protection of Persons and Property Act is a final ruling. A final ruling may not be reconsidered except as provided by law.

There is no provision of law that permits a second immunity hearing after a final ruling has been entered in the initial hearing. First, the opportunity to request immunity on the basis provided in the Act arises *only* under the Act—there is no common-law basis for such immunity—and the Act makes no provision for a second hearing. For this Court to provide the hearing Justice James contemplates, we would be effectively amending the Act—which we obviously may not do. Second, the only provision of law which permits the consideration of after-discovered evidence under any circumstance is Rule 29(b) of the South Carolina Rules of Criminal Procedure, which clearly does not apply to this situation. We may not amend Rule 29(b) without submitting the proposed amendment to the General Assembly pursuant to article V, section 4A of the South Carolina Constitution. We have no authority to otherwise "adopt the . . . standard" Justice James proposes.

My position is consistent with the basic concept of "immunity," which is that when immunity is provided, criminal proceedings must stop; immunity is a legal bar to further prosecution, particularly a trial. It is counterintuitive for a court to entertain a request to bar criminal proceedings from proceeding to trial *after* a trial has already been conducted. Thus, even if this Court had the authority to do what Justice James proposes, we should not do it.

When new evidence comes to light after a mistrial and before a retrial, as here, the defendant is free to present that evidence to the jury during the retrial, but a circuit court is not free to conduct a second immunity hearing.

**JUSTICE JAMES**: I agree with the majority but write separately to note my position that in the event of a mistrial, the defendant should be entitled to a second immunity hearing under certain circumstances. If, prior to the next trial convened after the mistrial, new evidence is discovered that is relevant to the immunity issue, the defendant's request for a new immunity hearing should be granted.

I would adopt the following standard: (1) the evidence was discovered after the mistrial; (2) the evidence could not have been, by the exercise of due diligence, discovered prior to the first immunity hearing; (3) the evidence is material and relevant to the immunity issue; and (4) the evidence is not merely cumulative or impeaching. The trial court would consider these factors and determine whether the defendant is entitled to a new immunity hearing.

I will address two points Justice Few raises in his concurring opinion. First, he writes that there is no provision of law permitting a second immunity hearing or allowing us to adopt the standard I propose. However, in *State v. Duncan*, we put some meat on the bones of the Protection of Persons and Property Act where none existed. 392 S.C. 404, 709 S.E.2d 662 (2011). In *Duncan*, we recognized that the Act does not set forth a burden of proof to be applied by the circuit court in an immunity hearing, nor does the statute set forth who—the defendant or the State—has the burden of proof. We filled in those gaps by holding that the defendant has the burden of establishing entitlement to immunity by the preponderance of the evidence. *Id.* at 411, 709 S.E.2d at 665. I believe our authority to adopt the standard I propose is no less than was our authority in *Duncan* to adopt the preponderance of the evidence standard.

Second, Justice Few maintains that "when immunity is provided, criminal proceedings must stop; immunity is a legal bar to further prosecution, particularly a trial. It is counterintuitive for a court to entertain a request to bar criminal proceedings from proceeding to trial *after* a trial has already been conducted." (emphasis Justice Few's). Of course, I agree that when immunity is sought, criminal proceedings must stop and cannot resume unless immunity is denied; however, I disagree that it is counterintuitive for a court to entertain another request for immunity after a mistrial. In subsection 16-11-420(B) of the Act, the General Assembly found "that it is proper for law-abiding citizens to protect themselves, their families, and others from intruders and attackers without fear of prosecution or civil action for acting in defense of themselves and others." In subsection 16-11-420(E), the General Assembly found that "no person or victim of crime should be required to surrender his personal safety to a criminal, nor should a person or victim be required to needlessly retreat in the face of intrusion or attack." A citizen's right to immunity is much too important to die at the door of a mistrial. And, to repeat

Justice Few's statement, "immunity is a legal bar to further prosecution." After a mistrial, "further prosecution" is squarely in play in the form of a second trial. The standard I propose would honor the legislative intent behind the Act.

Here, there was no new evidence satisfying the standard I propose. Therefore, I concur with the well-reasoned majority opinion.

**HILL, J., concurs.**